Charlotte M. O'LEARY, Appellant,

v.

Richard S. SCHWEIKER, Secretary of
Health and Human Services, Appellee.

No. 82–2223.

United States Court of Appeals,
Eighth Circuit.

Submitted May 20, 1983.

Decided June 30, 1983.

Steven M. Watson of Marks, Clare, Hopkins, Rauth & Cuddigan, Omaha, Neb., for appellant.

Ronald D. Lahners, U.S. Atty., and Paul W. Madgett, Asst. U.S. Atty., Omaha, Neb., for appellee.

Before LAY, Chief Judge, and HEANEY and FAGG, Circuit Judges.

HEANEY, Circuit Judge.

Charlotte M. O'Leary appeals from an order of the district court affirming the Secretary of Health and Human Services' final decision, which denied O'Leary's application for Social Security disability benefits. O'Leary was born March 1, 1943. She left high school in the tenth grade and married her present husband, David O'Leary. The O'Learys have five children. During the first years of her marriage when her children were very young, Charlotte O'Leary worked intermittently as a gift wrapper, a nurse's aide, and a line-worker. In October, 1965, after the birth of her last child and when she was approximately twenty-two years of age, Charlotte went to work at the Omaha Works of the Western Electric Corporation. She was a regularly employed benchhand at Western Electric until she injured her back in 1976, while lifting a heavy pan of parts.[1]

O'Leary went to see Dr. Robert Klein, an orthopedic surgeon, concerning her injury in 1976. Dr. Klein's diagnosis was acute lumbar strain, and O'Leary was admitted to the hospital on November 2, 1976, for conservative treatment, including physical therapy and an exercise program. She received a lumbar myelogram, the results of which were consistent with disc herniation at the L5–S1 level.

When O'Leary's symptoms failed to improve, she was readmitted to the hospital in January, 1977, for removal of a herniated disc. When her back and leg problems still persisted after her laminectomy, she filed for disability benefits in March, 1977. O'Leary returned to the hospital in June, 1977, for a therapeutic caudal block because she continued to experience pain in her back and right leg. This procedure did not provide any significant benefit, however, and she continued to see Dr. Klein and to take Empirin # 3 and aspirin on a daily basis for her pain.

O'Leary's application for disability benefits was denied initially and upon reconsideration. Although the disability examiner concluded that O'Leary was unable to return to her past work, the examiner stated that she retained the residual functional capacity for sedentary work and a narrow range of light work. At O'Leary's request, a hearing was held before Administrative Law Judge (ALJ) Edgerton. O'Leary supplemented the record with more recent medical reports from her treating physician, Dr. Klein, and the ALJ received testimony from O'Leary and a vocational expert at the hearing. On January 16, 1978, the ALJ held that the claimant could not return to her past work as a benchhand, but concluded that she retained the residual functional capacity to do sedentary work. The Appeals Council affirmed this decision, and O'Leary appealed to the United States District Court. Both parties filed motions for summary judgment. The late United States District Judge Robert V. Denney held that the record did not contain substantial evidence to support the Secretary's decision, and granted the claimant's motion for summary judgment.[2] *O'Leary v. Califano,* No. 78–0–370 (D.Neb. Jan. 29, 1980).

Judge Denney noted that the only evidence which supported the Secretary's deci-

---

1. O'Leary had been treated in February, 1972, for acute lumbar strain, which apparently had resulted from a fall. She was treated conservatively; and according to her physician's report, "got over the symptoms and * * * had no significant trouble with her back" until her subsequent injury in 1976.

2. Judge Denney also granted the claimant's motion requesting that the case be remanded to the Secretary for the taking of additional evidence, citing *Thorne v. Califano,* 607 F.2d 218 (8th Cir.1979) (record deemed incomplete; case remanded to have the views of the claimant's physician more fully developed).

   The original briefs submitted by the parties did not discuss the effect that should be given to Judge Denney's order granting O'Leary's motion for summary judgment. We requested

sion was the ALJ's evaluation of the medical reports and the ALJ's observation of the claimant during the hearing. Judge Denney found that the medical reports indicated that O'Leary could not do any prolonged sitting and that the ALJ's conclusion to the contrary was not supported by the record. Judge Denney further noted that while the ALJ's observations of O'Leary during the hearing were evidence in support of his finding that she could engage in sedentary activity, the record contained evidence that directly contradicted these observations. He stated:

> The [claimant's] testimony is that she cannot sit for more than thirty minutes without experiencing severe pain. This testimony is corroborated by the uncontradicted medical opinion of Dr. Klein. In light of this evidence, the administrative law judge's observations do not amount to substantial evidence supporting the conclusion that the [claimant] is able to engage in sedentary activity.

*Id.,* slip op. at 6.

On remand to the Secretary, ALJ Edgerton held a second de novo hearing at which O'Leary, her husband, and a vocational expert testified. The ALJ also received further medical evidence, including additional reports from O'Leary's treating physician and reports from two consulting physicians, Dr. Michael O'Neil, an orthopedic surgeon, and Dr. Charles Graz, a psychiatrist. On August 21, 1980, the ALJ again found that the claimant could not return to her past work, but that she could perform some kinds of sedentary work. On October 15, 1980, the Appeals Council affirmed this de-

cision, and O'Leary appealed to the United States District Court. The parties' cross-motions for summary judgment were referred to a United States Magistrate, who recommended that the decision of the Secretary be affirmed. United States District Judge C. Arlen Beam adopted this recommendation on July 9, 1982, and this appeal ensued.

Over six years have elapsed since O'Leary initially applied for Social Security disability benefits. Notwithstanding the long delay that has already occurred, we have no alternative but to reverse and remand this case for further proceedings. The following three reasons compel this action.

## I. Burden of Proof.

■ First, the ALJ did not properly allocate the burden of proof in assessing whether the claimant was able to perform any substantial gainful activity. Once O'Leary demonstrated that she could not return to her previous work because of her disability, the burden shifted to the Secretary to establish that there was other work in the national economy that she could perform. *See McDonald v. Schweiker,* 698 F.2d 361, 364 (8th Cir.1983); *McMillian v. Schweiker,* 697 F.2d 215, 220–221 (8th Cir. 1983); *McCoy v. Schweiker,* 683 F.2d 1138, 1146–1147 (8th Cir.1982) (en banc); *McGhee v. Harris,* 683 F.2d 256, 258 (8th Cir.1982); *Stone v. Harris,* 657 F.2d 210, 211 (8th Cir. 1981).

Although the initial claims examiner and the ALJ had previously determined that the claimant could not return to her former position as a benchhand, the ALJ commenced the second hearing by stating:

---

that additional briefs be filed on this issue; in these briefs, the parties dispute the meaning of his decision. The Secretary contends that although Judge Denney granted summary judgment in favor of the claimant, the remand allowed the ALJ to consider additional evidence to determine whether there were jobs available that the claimant could perform that did not require prolonged sitting. The claimant, on the other hand, contends that by granting her motion for summary judgment, Judge Denney determined that she was "disabled" within the

meaning of the statute and that the remand should have been limited to a precise calculation of the disability benefits to which she was entitled.

O'Leary, who was represented by counsel, did not object to the rehearing procedure employed by the ALJ, however, and because it is not clear that Judge Denney held that the claimant was "disabled," we accept the Secretary's construction of Judge Denney's order for purposes of this appeal.

**1338**

Now, the issue that is before me with respect to your application is the same as it was before the last time that you had a hearing. You must prove by the greater weight of the evidence that you became unable to engage in substantial, gainful work activity for a continuous 12-month period because of a medical impairment or a combination of impairments that are shown to exist by the medical evidence.

There was no evidence presented at the second hearing that the claimant *could* perform her past job as a benchhand. The vocational expert, Ms. Anita Howell, stated that in her opinion the claimant could not perform her former job and the ALJ specifically found that she could not do so in his August 21, 1980, decision. Yet there is no reference other than the ALJ's initial statement—either in the transcript of the second hearing or in the ALJ's opinion—with respect to the issue of the burden of proof. It thus seems clear that the ALJ failed to recognize that the burden shifted to the Secretary to show that the claimant could perform other work.[3]

■ On appeal, the Secretary argues that the ALJ's decision should be affirmed despite the ALJ's apparent failure to shift the burden, implicitly contending that the ALJ is not required to consider where the burden of proof lies in Social Security disability cases. The Secretary appears to reason that the hearing before the ALJ is a nonadversarial one and that therefore burden of proof concepts are inappropriate. We have consistently rejected this view of the process. The ALJ is required to follow this Court's teachings with respect to where the burden lies, and must recognize that the

burden shifts to the Secretary once the claimant proves that he or she is unable to perform his or her past work.

■ The Secretary's burden in this regard is twofold. He or she must first prove that the claimant retains the capacity to do other kinds of work, a burden which includes "the duty to establish by medical evidence that the claimant has the requisite RFC [residual functional capacity]." *McCoy v. Schweiker, supra,* 683 F.2d at 1147. The claimant's RFC is the claimant's physical capacity to do work which is defined in the Secretary's regulations as sedentary, light, medium, heavy, or very heavy.[4] If there is evidence that the claimant is also suffering from a nonexertional limitation, such as a mental, sensory or skin impairment, an environmental restriction, or pain, the Secretary's burden includes showing that these impairments do not preclude the claimant from performing other work.

■ Once the claimant's capabilities are established, the second aspect of the Secretary's burden is to demonstrate that there are jobs available in the national economy that realistically suit the claimant's qualifications and capabilities. *McMillian v. Schweiker, supra,* 697 F.2d at 221; *Cole v. Harris,* 641 F.2d 613, 614 (8th Cir.1981). In determining whether there are jobs available that a claimant can perform, the Secretary must consider the claimant's exertional and nonexertional impairments, together with the claimant's age, education, and previous work experience. *McMillian v. Schweiker, supra,* 697 F.2d at 221; *McCoy v. Schweiker, supra,* 683 F.2d at 1146–1148.

3. The ALJ did require vocational expert testimony in O'Leary's case, but the recognition that such testimony is needed to establish the availability of jobs in the national economy is not equivalent to placing the burden on the Secretary *to show there is other work the* claimant can perform. *See infra,* at 1338.

4. 20 C.F.R. § 1567 (1982). For example, sedentary work is defined as follows:

*Sedentary work.* Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a) (1982).

If the claimant's characteristics identically match those contained in the Medical-Vocational Guidelines, Appendix 2, Subpart P, Part 404, Chapter III, Title 20 of the Code of Federal Regulations, 20 C.F.R. §§ 200.00–204.00 (1982) (hereinafter Appendix 2), the Secretary may meet the burden of showing there are jobs in the national economy that the claimant can perform by applying the "grid." If the claimant's characteristics do not match those in the regulations—either because the claimant is suffering from a nonexertional impairment or is precluded from doing the full range of a particular work classification or for any other reason—the Secretary is required to produce vocational expert testimony concerning whether there are jobs available that a person with the claimant's particular characteristics can perform. *See McDonald v. Schweiker, supra,* 698 F.2d at 364–365; *Nicks v. Schweiker,* 696 F.2d 633, 636 (8th Cir.1983); *Tucker v. Schweiker,* 689 F.2d 777, 780 (8th Cir.1982); *McCoy v. Schweiker, supra,* 683 F.2d at 1147–1148.

Because there is no dispute that O'Leary cannot return to her previous work, on remand the evidence in the record must be evaluated with the burden placed on the Secretary to prove that the claimant, despite her diminished capabilities, can perform other work in the national economy.

## II. The Claimant's Capabilities.

The ALJ's second error concerns his evaluation of O'Leary's capabilities, particularly his evaluation of her pain. The ALJ stated that O'Leary's testimony regarding her pain was "substantially rejected as a basis for disability in that it conflicts with the pertinent medical evidence" and the ALJ's personal observations of the claimant at the hearing.

The ALJ's statement of a "conflict" with the medical evidence is not supported by the record. The medical reports all contain corroborating evidence of O'Leary's pain and limitation of motion. *See Nicks v. Schweiker, supra,* 696 F.2d at 635.

O'Leary's treating physician, Dr. Klein, indicated that O'Leary's "lumbar flexion is limited about 50%, or that she has about 40° of lumbar flexion," and he concluded in October, 1977, that her condition was consistent with a fifteen percent permanent disability of the body as a whole. He stated in a May, 1978, report that her "[f]orward flexion of the lumbar spine is to a point where the hands reach the knees. At this point, and midway through lumbar extension, the patient complains of right sciatica [painful condition in the region of the hip and thighs] * * *. With the patient supine [lying face upward, on her back], straight leg raising is to 80 degrees on the left without pain. At 45 degrees on the right the patient complains of right sciatica. The Lasegue's and Patrick's tests are positive on the right."

His report concluded: "This patient continues to have symptoms and findings related to a lumbar disc injury and subsequent surgery. She is unable to engage in work activity requiring prolonged standing, prolonged sitting, or any significant amount of bending or lifting." In a 1979 report, he emphasized that O'Leary's symptoms "have been worsening," and he mentioned episodes where her right leg simply gave way, causing her to fall down.

Dr. Michael O'Neil, a consulting physician, examined O'Leary in 1978 and again in 1980. His 1978 report stated that following her surgery in 1977, "she experienced pain in the right leg," and although her left leg improved, "[h]er low back and right leg pain have persisted to the present time and are becoming worse." O'Neil's physical examination revealed that "[t]here is tenderness to palpatation over the midline low back area and over the right buttock * * *. Range of motion of the lumbosacral spine is limited approximately 25 percent. She has flexion with the finger-tips 14 inches from the floor with associated pain in the midline low back area and right buttock. She also complains of discomfort with maximum extension and right and left lateral bending.

Straight leg raising on the left is negative at 90 degrees. Straight leg raising on the right is positive at 75 degrees."

O'Neil concluded that the claimant's condition "would be [in] keeping with an S1 nerve root syndrome on the right," which he suspected would be "permanent unless further surgery should happen to be successful." He stated: "I would agree that she will have difficulty working even at a job which is sedentary in nature." His report in 1980 contained similar findings. After recounting her 1977 surgery, O'Neil's report stated:

> Following her operation, she continued to experience pain in the low back area and right posterior thigh and calf. Her pain did not respond to rest, physical therapy and several other treatment modalities including an epidural steroid block. Her pain has been unchanged since that time. She has difficulty in stooping, twisting or bending because of increasing pain in the low back and right posterior thigh. She has been unable to do any type of work which requires any lifting, pushing, pulling or bending.

Her range of motion was even more limited than in 1978:

> Range of motion of the lumbosacral spine is limited to 40 to 50 percent with pain, primarily on maximum flexion and extension. Right and left lateral bending is limited about 25 percent with pain. Straight leg raising is positive on the right side at 90 degrees, causing low back and right buttock pain.

Although he noted that "[s]he does not appear to be in any acute distress," he concluded:

> Mrs. O'Leary has had a lumbar laminectomy for a herniated lumbar disc of L5–S1 and has residual low back and right leg pain secondary to nerve root fibrosis

or entrapment. I do not believe that she will be capable of work which requires stooping, bending, lifting, pushing, or pulling. She has some difficulty sitting for long periods of time because of her back and right leg also and this makes employment rather difficult.

At the request of ALJ Edgerton, O'Leary also saw a psychiatrist, Dr. Charles Graz. Dr. Graz's report fully corroborated O'Leary's complaints of pain, stating that she "did give the impression of having bona fide back pathology and discomfort. * * * She is bothered by pain and swelling in her right leg which is a persistent thing. * * * All along she described how she wished that she could have the area permanently numbed and would be willing to have surgery if the pain could be eliminated, but she said her doctors advised her that would be the incorrect thing to do. Thus far, she just has obtained relief tentatively on the basis of sitting in a hot tub of water and taking her pain medicines."

Dr. Graz also noted "her slight limp as she walked and during the interview, her great discomfort in sitting in any one position for a prolonged time. In fact, at times she had to stand up and reply to questions, rather than be seated."[5] He concluded that "[t]here were no psychiatric or psychologic impairments" and offered his opinion that "[h]er condition appears * * * to be physical."

In sum, there is no "conflict" in the medical reports cited above with O'Leary's complaints of pain. The only bit of medical evidence which "conflicts" with her testimony is the physical capacities evaluation form or "checklist" completed by Dr. O'Neil after his examination of O'Leary in 1980. Dr. O'Neil indicated on the form that the claimant could sit for four hours in an eight-hour day and could stand for four hours in an

---

**5.** At the first administrative hearing, the claimant also requested permission to sit and stand alternatively to help relieve her pain.

eight-hour day.[6] The ALJ concluded that O'Leary could therefore perform jobs that allowed her to sit and stand intermittently, since her treating physician, Dr. Klein, had only precluded her from engaging in work that required *prolonged* sitting and standing. Dr. Klein was never asked how many hours the claimant could sit and stand—the ALJ appears to have assumed that prolonged means longer than four hours. Judge Denney apparently thought prolonged was a shorter period of time,[7] however, as did the consulting psychiatrist, who after an interview with the claimant noted "her great discomfort in sitting in any one position for a prolonged time."

Moreover, there is no indication of how Dr. O'Neil arrived at this opinion. O'Leary testified that O'Neil never asked her how long she could sit and stand in an eight-hour day, and her testimony is directly contrary to his opinion as expressed on the checklist. Further, there is nothing in the record which would show whether Dr. O'Neil's opinion was that the claimant could sit and stand for eight hours, day in and day out, as would be required to hold a competitive job. He stated in his written reports that because of her disabilities, employment—even in a sedentary job—would be difficult.

■ Because of the interpretive problems inherent in the use of forms such as the physical capacities checklist, our Court has held that while these forms are admissible, they are entitled to little weight and do not constitute "substantial evidence" on the record as a whole. *Camp v. Schweiker,* 643 F.2d 1325, 1333–1334 (8th Cir.1981); *McCoy v. Schweiker, supra,* 683 F.2d at 1147 n. 8; *Gilliam v. Califano,* 620 F.2d 691, 693 (8th Cir.1980); *Landess v. Weinberger,* 490 F.2d 1187, 1189 (8th Cir.1974). The primary reliance which the ALJ apparently placed on this form was thus in error.

The ALJ's reliance on the checklist to discount O'Leary's testimony concerning her pain is even more questionable in view of the other corroborating evidence of her pain contained in the record. *See Brand v. Secretary of HEW,* 623 F.2d 523, 527 (8th Cir.1980). O'Leary had worked regularly at Western Electric since 1965, a full-time job which she took as soon as her children were old enough to permit her to do so. Her daily activities are much more restricted than before her injury. Prior to her injury, she worked eight hours a day, five days a week, lifting a pan of parts that weighed between thirty and seventy pounds. She bowled, coached softball, played tennis, and cooked and cleaned house for a family of seven.

■ Both her husband and O'Leary testified at the second hearing that she now experienced a constant, significant degree of pain, which limited her daily routine. Most of her time is spent watching TV and reading. She has difficulty sleeping and can only sit for a half an hour and then has to stand for three to five minutes before she can sit again. At the hearing, she sat with her weight on her left side and her right hand under her right leg. She regularly takes Empirin # 3 and aspirin or Excedrin for her pain, and she often sits in a hot bathtub or lays on the couch with a heating pad to relieve the aches in her back and leg. Some days her pain is so bad that she cannot do anything besides lay down. On days when she is feeling better, she rinses off the breakfast dishes and cooks the evening meal. She can run the washer and dryer, but her children put their clothes away and bring them to the washer as she cannot lift a laundry basket. Her husband and children do all the heavy housework and grocery shopping, and her husband changed his shift to evenings to be able to help more during the day. There is thus ample evidence in the record to corroborate

---

**6.** The checklist questions and responses were as follows:

In an 8 hour day claimant can stand and walk:

2 hrs.___ 4 hrs._X_ 6 hrs.___ 8 hrs.___

In an 8 hour day claimant can sit:

8 hrs.___ 6 hrs.___ 4 hrs._X_ 2 hrs.___

**7.** *See supra,* at 1336–1337.

the claimant's complaints of pain. *See generally Duncan v. Harris,* 518 F.Supp. 751, 757–758 (E.D.Ark.1980) (factors relevant to credibility of complaints of pain).

█ Even if all of the medical evidence did not fully corroborate O'Leary's complaints, however, the ALJ may not disregard these complaints solely because the objective medical evidence does not fully support them. *See Tucker v. Schweiker, supra,* 689 F.2d at 780–781; *Brand v. Secretary of HEW, supra,* 623 F.2d at 525–526; *Northcutt v. Califano,* 581 F.2d 164, 166 (8th Cir.1978). Claimants are entitled to an individualized determination of the effects of their condition: "[a] back condition may affect one individual in an inconsequential way, whereas the same condition may severely disable another person who has a greater sensitivity to pain or whose physical condition * * * is generally deteriorated." *Landess v. Weinberger, supra,* 490 F.2d at 1190. *See Cole v. Harris, supra,* 641 F.2d at 615; *Brand v. Secretary of HEW, supra,* 623 F.2d at 526–527.

█ On remand, the ALJ must give full consideration to O'Leary's complaints of pain. He may not rely solely on Dr. O'Neil's responses on the checklist as substantial evidence that she can perform some types of sedentary jobs. Moreover, although credibility findings are for the ALJ in the first instance, the ALJ's personal observations of the claimant may not alone constitute substantial evidence that she can perform sedentary work. *See McMillian v. Schweiker, supra,* 697 F.2d at 221–222; *Lund v. Weinberger,* 520 F.2d 782, 785 (8th Cir.1975). Rather, the ALJ must consider all of the evidence and must attempt either to reconcile the medical reports of O'Leary's treating physician, Dr. Klein, with those of the consulting physician, Dr. O'Neil, or he must direct interrogatories to each physician to obtain a more substantiated opinion as to O'Leary's capabilities. *See Woodard v. Schweiker,* 668 F.2d 370, 374 (8th Cir. 1981). The burden is on the Secretary to show that this claimant is able to perform the requisite acts of sedentary work day in and day out in the competitive conditions of work in the real world, and O'Leary is entitled to a fair evaluation of her capabilities. *Simonson v. Schweiker, supra,* 699 F.2d at 428–429; *Cole v. Harris, supra,* 641 F.2d at 614; *Rhines v. Harris,* 634 F.2d 1076, 1079 (8th Cir.1980).

### III. Availability of Other Work.

█ The ALJ's third error involves his reliance on deficient vocational expert testimony with respect to the availability of jobs in the national economy which the claimant could perform. The ALJ recognized that expert testimony was required since O'Leary "has been precluded from performing the full range of sedentary work activity, based upon the functional and physical restrictions set forth in the medical evidence." There is also evidence that O'Leary suffers from a significant nonexertional impairment, as she testified that she is in constant pain. *Nicks v. Schweiker, supra,* 696 F.2d at 636; *Tucker v. Schweiker, supra,* 689 F.2d at 780. Thus, Table No. 1 in Appendix 2 of the Medical-Vocational Guidelines, which applies to claimants who can perform sedentary work activity, could not be used to meet the Secretary's burden of showing there were jobs in the national economy that O'Leary could perform. In this case, the Secretary was required to produce vocational expert testimony concerning whether there were jobs available that a person with O'Leary's particular impairments could perform. *See id.; McCoy v. Schweiker, supra,* 683 F.2d at 1146; Appendix 2, *supra,* 20 C.F.R. § 201.-00(h) (1982). The ALJ did receive testimony from a vocational expert on this issue, but the expert's testimony does not constitute substantial evidence, since the question which the ALJ asked the expert did not include any mention of O'Leary's pain.

At the first administrative hearing, the ALJ asked the vocational expert, Mr. Robert Hopkins, to assume that O'Leary's testimony concerning her limitation of motion and pain was true. The expert stated that if that were the assumption, there were no jobs that he could identify that the claimant could perform. The ALJ then asked

the expert to consider only the "clinical laboratory findings" contained in the reports of Dr. Klein, and the expert responded that in his opinion the claimant could perform various sedentary jobs such as small parts assembler, hand packager, or labeller.[8]

At the second hearing the ALJ asked only the following question:

Assume the claimant's age, education and past work experience and still assuming the medical evidence that you studied, excluding again from your consideration the opinion that the claimant can or not, can or cannot work or is or is not disabled, I'm asking you to consider only the critical laboratory findings that are in support of those diagnoses contained in those documents. And further considering the opinion that any work activity that she could engage in would be limited to work activity that would not require prolonged standing, prolonged sitting or significant amount of bending or lifting.

Based upon that hypothesis, do you have an opinion whether any jobs the claimant could do exist in the region or subregion of the economy in significant numbers that could be related to any of the occupations published by the Social Security Administration and that agency's regulations?

The vocational expert, Ms. Anita Howell, responded that there were some jobs available, such as an assembler, packager, reservations clerk, or parking lot cashier, that allowed the worker the option to sit or stand as desired, which the claimant could perform. The ALJ adopted this opinion, again emphasizing that the vocational expert considered "the credible testimony in light of the pertinent medical evidence, such as Dr. O'Neil's assessment [on the physical capabilities checklist.]"

This Court has frequently held that the hypothetical questions posed to vocational experts must precisely set out all of the claimant's impairments. *E.g., McMilli-*

an *v. Schweiker, supra,* 697 F.2d at 219–220, 221–222; *Tennant v. Schweiker,* 682 F.2d 707, 711 (8th Cir.1982); *Camp v. Schweiker, supra,* 643 F.2d at 1333. The absence of any direct reference to the claimant's pain and the limitation concerning "only the critical laboratory findings" render the vocational expert's testimony of little value in this case. *See Stephens v. Secretary of HEW,* 603 F.2d 36, 41–42 (8th Cir.1979); *Daniels v. Mathews,* 567 F.2d 845, 848 (8th Cir.1977). While it is for the trier of fact to resolve conflicts of evidence, the ALJ erroneously discounted the claimant's complaints of pain based upon the "pertinent medical evidence" and thus erroneously excluded any mention of her pain from the hypothetical. *McMillian v. Schweiker, supra,* 697 F.2d at 221–222; *Stone v. Harris, supra,* 657 F.2d at 211. Including reference to Dr. Klein's medical opinion of the claimant's capabilities was certainly an improvement from the question Judge Denney found to be of little value after the first hearing, but the ALJ still did not precisely set out all of the claimant's disabilities in the hypothetical question. A response to a defective hypothetical question does not constitute substantial evidence. *McGhee v. Harris, supra,* 683 F.2d at 259; *Gilliam v. Califano, supra,* 620 F.2d at 693–694.

## IV.  Conclusion.

In conclusion, we regret the delay that has already taken place in the determination of whether O'Leary is entitled to disability benefits. For all of the reasons discussed above, however, we have no alternative but to reverse the decision of the district court and remand this case with directions to remand to the Secretary either to grant O'Leary her requested benefits or to properly and promptly evaluate her condition, giving appropriate weight to her complaints of pain and placing the burden on the Secretary to show that there is sedentary work that someone with all of

---

**8.** Judge Denney held that the expert's response to this second question was "of little value, since vocational experts are not qualified to interpret medical records. *Lund v. Weinberger, supra,* 520 F.2d at 785." We agree with this holding.

O'Leary's impairments can realistically perform.