Joyce BASTIAN, Appellant,

v.

Richard S. SCHWEIKER, Secretary of Health and Human Services, Appellee.

No. 82–1800.

United States Court of Appeals, Eighth Circuit.

Submitted May 18, 1983.

Decided Aug. 1, 1983.

Charles H. Jacobs, Hughes, Trannel & Jacobs, Dubuque, Iowa, for appellant.

Evan L. Hultman, U.S. Atty., Robert L. Teig, Asst. U.S. Atty., N.D. Iowa, Cedar Rapids, Iowa, Paul P. Cacioppo, Regional Atty., Frances Reddis, Asst. Regional Atty., Dept. of Health and Human Services, Kansas City, Mo., for appellee.

Before BRIGHT and McMILLIAN, Circuit Judges, and NICHOL,* Senior District Judge.

McMILLIAN, Circuit Judge.

Joyce Bastian appeals from the decision of the District Court for the Northern District of Iowa upholding the Secretary of Health and Human Services' (Secretary) denial of her request for social security disability benefits. Upon review of the record, we conclude that there is a lack of substantial evidence supporting the Secretary's finding that appellant could perform sedentary work as of the date she was last entitled to disability benefits. For the reasons discussed below, we reverse and remand for further proceedings consistent with this opinion.

Appellant was born on February 5, 1934, and has a tenth grade education. She worked primarily as a sales clerk or cashier until June 1, 1971, when she decided not to return to work because of her physical impairments. At age nine, appellant contracted polio, which caused permanent damage to both her feet and lower legs. The Secretary found, and appellant does not dispute, that she last met the special earnings requirement under the Social Security Act on

* The Honorable Fred J. Nichol, United States Senior District Judge for the District of South Dakota, sitting by designation.

June 30, 1976. Therefore the existence of a disability must be established on or before that date. *Milton v. Schweiker,* 669 F.2d 554, 555 (8th Cir.1982).

On August 10, 1979, appellant applied for disability benefits. After her application was denied initially and on reconsideration, she requested a hearing before an administrative law judge (ALJ), which took place on April 4, 1980. At the hearing, appellant testified that she was forced to quit work because of recurrent pain in her right shoulder and hips, swelling in her legs and ankles, and her frequent need to elevate her legs and rest. Appellant testified that she had difficulty walking, standing and sitting for prolonged periods of time.

The medical evidence submitted to the ALJ consisted primarily of the reports of three physicians who examined appellant in 1979 and 1980. Drs. R.V. Mullapudi and Newton Chun both diagnosed the extent of appellant's polio-related impairments and concluded that she was disabled because of her inability to sit or stand for long periods. Dr. Donald Bunce, an osteopath employed by the Social Security Administration to examine appellant, also found substantial foot and leg impairments. Dr. Bunce reported that appellant's lower legs had atrophied, that her left leg was shorter than her right, and that her left leg and foot were partially paralyzed. During the examination, Dr. Bunce reported that appellant developed "obvious hypoxia with cyanosis" (lack of oxygen) in her legs and had to elevate her legs for relief. Despite his findings, Dr. Bunce concluded that appellant could probably do work involving mostly sitting.

The ALJ accepted Dr. Bunce's opinion and found that appellant had the residual functional capacity to perform sedentary work. After applying the grid found in 20 C.F.R. Part 404, Subpart P, App. 2,[1] §§ 201.18–.20 and .24–.26, the ALJ found

appellant not disabled. On August 30, 1980, the Appeals Council adopted the ALJ's decision. Appellant appealed the denial of benefits to the district court. The court reversed and remanded for further hearing because of the lack of testimony by a vocational expert. The district court directed that on remand the parties must focus their attention on appellant's condition at the time she last met her insured status.

On August 20, 1981, appellant appeared before another ALJ. Appellant again stated that her polio-related impairments caused her to stop work in 1971. Appellant further testified that her condition was essentially the same in 1971 as it was at her 1980 and 1981 administrative hearings. On remand George Paprocki testified as a vocational expert. In response to a hypothetical question by the ALJ that assumed appellant could perform sedentary work, the expert testified that there were jobs in the economy that appellant could perform. However, when asked by appellant's counsel if appellant would be employable if she had to lie down at times throughout the day, the expert replied that she would not.

The ALJ found that appellant could not return to her former work. The ALJ, however, found that appellant had the residual functional capacity to perform sedentary work. Accordingly, the ALJ again applied the grid and found appellant not disabled. Both the Appeals Council and the district court affirmed. This appeal followed.

■ In reviewing a denial of social security disability benefits, we must decide whether substantial evidence on the record as a whole supports the Secretary's decision. 42 U.S.C. § 405(g). Appellant argues that the ALJ erroneously applied the grid because the record does not contain substantial evidence to support the conclusion that she has the residual functional capacity to do sedentary work.[2] We agree.

---

1. The Supreme Court has recently upheld the Secretary's use of the grid in appropriate cases. *Campbell v. Heckler,* —— U.S. ——, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

2. The regulation states:

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often

In *McCoy v. Schweiker,* 683 F.2d 1138, 1146 (8th Cir.1982) (en banc), this court stated that "[i]f a claimant's relevant characteristics differ in any material respect from those of the grid, the [grid] cannot be applied, and all the pre-existing requirements of case law, including the customary insistence on the use of vocational experts, retain their full vigor." In *McCoy,* the court noted that assessment of a claimant's residual functional capacity would generally be the most critical question and that an ALJ's assessment of residual functional capacity must be a realistic evaluation of a claimant's "ability to perform the requisite physical acts day in and day out in the sometimes competitive and stressful conditions in which real people work in the real world." *Id.* at 1147 (footnote omitted). Here, we find no record support for the ALJ's conclusion that appellant could perform sedentary work in a competitive work setting.

> In denying benefits, the ALJ stated: [I]t is the finding of this administrative law judge that the claimant did have the residual capacity for sedentary work prior to June 30, 1976. This is based upon her limited ability to stand or walk for any significant period of time. Furthermore, the vocational expert testified to significant numbers of other work positions which the claimant could perform with this residual functional capacity. He noted an absence of sedentary work positions in response to her testimony concerning her present need to lie down during the day. There is no evidence that these daily rest periods were a necessity prior to June 30, 1976 . . . .

The first two sentences of this finding convey an impression that the ALJ equated limitations on a person's ability to stand or walk with a residual functional capacity to perform sedentary work. We believe that the ALJ proceeded on the erroneous premise that although appellant could not perform light work, she was presumed capable of sedentary work until she proved otherwise. In *Simonson v. Schweiker,* 699 F.2d 426, 428 (8th Cir.1983), this court condemned placing the burden on a claimant to "show that he could not perform these lighter categories of work." We stated that the "Secretary [, not the claimant,] must offer substantial evidence of [the claimant's] actual ability to work before job availability in the economy becomes relevant." *Id. See also O'Leary v. Schweiker,* 710 F.2d 1334 at 1337–1339 (8th Cir.1983).

In addition, the ALJ erred in discounting appellant's allegations of disabling pain, fatigue, and swelling at the time she met her insured status because of a lack of objective evidence. This court has repeatedly held that an ALJ "may not disregard [a claimant's] subjective complaints solely because the objective evidence does not fully support them." *O'Leary v. Schweiker,* at 1342 (and cases cited therein). We find Dr. Bunce's opinion that appellant could perform sedentary work of little, if any, evidentiary value. This court has held that an opinion of a consulting physician who examines a claimant on only one occasion and does not consider a claimant's subjective allegations is entitled to little weight. *McCoy v. Schweiker,* 683 F.2d at 1147 n. 8. In this case, Dr. Bunce's conclusion that appellant could probably perform sedentary work is especially troubling in light of Dr. Bunce's observation that during the examination appellant had to elevate her legs to relieve cyanosis.[3]

necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
20 C.F.R. § 404.1567(a) (1983).

3. In *O'Leary v. Schweiker,* 710 F.2d 1334 (8th Cir.1983), the court stated that an "ALJ must give full consideration to [claimant's] complaints of pain." at 1342. The court noted that

although credibility findings [concerning allegations of pain] are for the ALJ in the first instance, the ALJ's personal observations of the claimant may not alone constitute substantial evidence that [claimant] can perform sedentary work . . . . Rather, the ALJ must consider all of the evidence and must attempt either to reconcile the medical reports of [claimant's] treating physician . . . with those of the consulting physician . . . or he must direct interrogatories to each physician to

▪ Accordingly, the judgment is reversed and the case is remanded to the district court with directions to remand the claim to the Secretary to either award the requested benefits or hold a new hearing. If another hearing is held, again we remind the Secretary to focus the medical evidence,[4] appellant's testimony, and vocational testimony[5] on appellant's condition as of the date she last met her insured status. See *Nicks v. Schweiker*, 696 F.2d 633, 636 (8th Cir.1983).

obtain a more substantiated opinion as to [claimant's] capabilities.

*Id.* (citations omitted). The court also held that the ALJ's primary reliance on the results of a consulting physician's residual functional capacities checklist to discount claimant's allegations of pain was erroneous. *Id.*

4. We note that the medical evidence is directed at appellant's condition at the time of the physicians' 1979 and 1980 examinations of appellant. Although medical evidence of a claimant's condition after the expiration of her insured status may be relevant evidence of her condition during her insured status, *Poe v. Harris*, 644 F.2d 721, 723 n. 2 (8th Cir.1981), here none of the physicians offered an opinion as to the extent and severity of appellant's impairments at the time of her insured status. On remand, both the government's physician and appellant's treating physician must address this crucial issue. *O'Leary v. Schweiker*, at 1342.

5. We also note that the ALJ erred in asking the vocational expert to assume that appellant had the residual functional capacity to perform sedentary work. "Hypothetical questions harboring this assumption have been found defective in a long line of cases." *Simonson v. Schweiker*, 699 F.2d 426, 430 (8th Cir.1983) (and cases cited therein). On remand, the ALJ should pose a hypothetical question to a vocational expert that precisely sets forth appellant's impairments and resulting functional limitations so that the expert can realistically assess the availability of jobs. *O'Leary v. Schweiker*, at 1343.