Curtis C. BAUGUS, Appellant,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES, Appellee.

No. 82–2510.

United States Court of Appeals, Eighth Circuit.

Submitted June 16, 1983.
Decided Sept. 14, 1983.

Evan L. Hultman, U.S. Atty., Asher E. Schroeder, Asst. U.S. Atty., N.D. Iowa, Sioux City, Iowa, for appellee; Paul P. Cacioppo, Regional Atty., Kenneth J. Cain, Dept. of Health and Human Services, Kansas City, Mo., for appellee.

Keith A. Kreiman, Kelley A. Rice, Thomas A. Krause, Legal Services Corp. of Iowa, Northwest Regional Office, Sioux City, Iowa, for appellant.

Before LAY, Chief Judge, SWYGERT, Senior Circuit Judge,* and ARNOLD, Circuit Judge.

LAY, Chief Judge.

Curtis Baugus appeals from the order of the Honorable Donald E. O'Brien, United States District Court for the District of Iowa, affirming the decision of the Secretary of Health and Human Services denying disability benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.* Baugus contends that (1) the decision of the Secretary is not supported by substantial evidence on the record as a whole; (2) the Administrative Law Judge's (ALJ) reliance on the Medical-Vocational Guidelines was error; and (3) the ALJ failed to fully and fairly develop the evidence at the administrative hearing. We reverse the district court and order an award of benefits to Baugus.

*Statement of the Case.*

Baugus applied for Social Security Disability Insurance on November 17, 1980. He was granted a hearing before the ALJ who concluded that Baugus was not disabled within the meaning of the Social Security Act.[1] The Appeals Council of the Social Security Administration found there was no basis for granting a request for review and refused to review the decision of the ALJ; on petition for review, the district court affirmed the denial of benefits.

---

* Luther M. Swygert, Senior Circuit Judge for the United States Court of Appeals for the Seventh Circuit.

1. Disability is defined under 42 U.S.C. § 423(d)(1) of the Social Security Act as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."

*Testimony and Evidence.*

Baugus testified that he was 43 years of age and has an eighth grade education. He was self-employed for the last 17 years as a general ·contractor, tree trimmer, concrete form setter and truck driver. He suffers from a back condition which has severely restricted his ability to engage in work. He also testified that he had a residual disability from polio, and that recently he had surgery for cancer and surgery to correct a hernia. He testified that his right leg from ·the waist to the knee often was numb, that the numbness in his legs could last three to four days at a time, and that his legs went numb after 15 to 30 minutes of standing. His left leg had severe pain that radiated from his upper leg to his toes. He further testified that he could not squat or kneel. He stated he could only walk one and one-half blocks and at the most climb one flight of stairs. He said he could pick up one gallon of milk. Baugus testified he is completely restricted from carrying on any substantial activity.

In September 1980 Baugus underwent a radical left orchiectomy due to seminoma of the left testicle. He also had surgery for repair of a right and left direct inguinal hernia. He was then treated with radiation therapy. He was seen by Dr. Blenderman for treatment of lower back pain which radiated into his legs causing pain and numbness. This pain was a result of spondylolysis and spondylolisthesis, and consequently, Baugus was fitted with a high back brace.

In March 1981 Baugus was seen and treated by Dr. J.W. Freeman. Dr. Freeman noted:

This gentlemen does appear to have significant back pain. Certainly by his account it has severely limited very normal vigorous physical activities. Based on his description I do think that he is having some radicular pain to both legs.

The numbness in the right leg suggest an 14 radiculopathy. It is difficult to evaluate the patient by virtue of his old polio. I suspect that the absent reflex in legs and certainly the weakness of the left leg could all be chronic and a result of his old lower motor nueron injury from polio.

Dr. John A. McFarlane reported:

Curtis Baugus has been a patient of mine since July 29, 1980 when he came in because of carcinoma of the testicle. He had a radical orchiectomy for this and has had radiation therapy.

He also has a disc condition which is incapacitating him and with the two diseases, he has become unable to perform his usual physical activities to render a wage earning job. It is my feeling that this man should be classified as disabled....

Dr. Dennis L. Johnson, an orthopedic surgeon, stated that Baugus had "grade II spondylolisthesis of L5 on S1 with neurologic involvement of L5 on the left and S1 on the right." Dr. Johnson felt that Baugus might eventually require a "laminectomy and posterolateral fusion for resolution of his symptoms." Dr. Johnson stated on June 10, 1981, that Baugus must limit his lifting to under 25 pounds indefinitely.

The ALJ found Baugus was unable to return to his previous line of work but was not disabled within the meaning of 42 U.S.C. § 423(d) (1982) of the Social Security Act. He further found Baugus possessed the residual functional capacity for the full-range of "sedentary" labor under section 404.1567(a) of the Social Security Administrations Regulations.[2]

The question we must decide is whether the ALJ's decision is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g) (1983); *McGhee v. Harris,* 683 F.2d 256, 258 (8th Cir.1982); *Gilliam v. Califano,* 620 F.2d 691, 693 (8th Cir.1980). The Supreme Court has defined "substan-

---

**2.** This regulation defines sedentary work as: Sedentary work entails lifting 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

tial evidence" in this context, as " 'more than a mere scintilla.' " *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971), *quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938). We find considering the record as a whole there is not substantial evidence to uphold the ALJ's determination.[3]

■ The evidence was clear that Baugus could not return to his previous line of work. Thus, the burden shifted to the Secretary to show that work existed in the national economy that Baugus was capable of performing. *Jackson v. Schweiker,* 696 F.2d 630, 631 n. 1 (8th Cir.1983); *Gilliam v. Califano,* 620 F.2d at 693. The secretary must establish a claimant's residual functional capacity[4] by substantial evidence. *McDonald v. Schweiker,* 698 F.2d 361, 364 (8th Cir.1982); *Weber v. Harris,* 640 F.2d 176, 177–78 (8th Cir.1981). Although it is unclear from the record whether the ALJ ever shifted the burden of proof to the Secretary, we find the Secretary did not meet this burden.

*Hypothetical Question.*

A. *Proper Form.*

The hypothetical questions and answers thereto relied upon in part by the ALJ to the vocational expert were clearly improper. The vocational expert considering all of Baugus' testimony and the medical evidence testified that Baugus could not return to his former work. The following dialogue took place:

Q Assume the claimant's age, education, and past work experience, and then assume the testimony that you've heard from this individual this morning, do you have an opinion as to whether the claimant retains any vocational residual skills that could be transferred to any of the occupations published by the Social Security Administration in the Social Security Administration's regulations, or to any related type work activity that he may have performed in the past, that exists in the region or (inaudible) economy in significant numbers?

A Yes, I do.

Q And what is that opinion?

A According to his testimony today, he does not.

Q Assume the claimant's age, education, and past work experience, and still assuming the medical evidence that you've examined, *excluding here the consideration or any opinion that this individual can or cannot work, or is or is not disabled,* because that will be the decision reached by the Secretary of Health and Human Services in this particular proceeding, and I ask you to *consider only the clinical or laboratory findings that are supportive* of any of the diagnoses that are set forth in these documents, do you have an opinion as to whether the claimant retains any residual vocational skills that can be transferred to any these occupations published by the Social Security Administration in that agency's regulations, that exist in the region or (inaudible) economy in significant numbers, or be any jobs that would be related to his past work experience? (Emphasis added).

A Yes, I do.

Q And what's that opinion, please?

A That he does.

The expert testified as to available jobs in the national economy, and Baugus was then permitted to ask these questions:

CLAIMANT: These jobs, you know, like for standing, you know, what would I do after my 15 to 30 minutes?

---

**3.** Baugus argues that his impairments meet or equal those listed in 20 C.F.R. § 404.1520(d) (1982) and this required a finding of disability. It is not clear from the record whether the ALJ ever considered this contention. Baugus argues that 20 C.F.R. Part 404, App. 1 Part A § 1.05 and § 11.11 of the Listing of Impairments are applicable. Because we find that there exists substantial evidence on the record as a whole that Baugus is disabled under the Act, we need not remand for this determination.

**4.** Residual functional capacity is defined in 20 C.F.R. § 404.1545(a) of the Social Security Administration Regulations as "what you can do despite your limitations."

MRS. HOWELL: According to what you've said today, you would not be able to perform them.

CLAIMANT: And then what—what about from, you know, my sitting and that, do you have anything that—is there anything like a person could—is there anything that would fall in my category?

MRS. HOWELL: According to what you've said today, there would not be.

■ As we have held on numerous occasions, a hypothetical question must "set out all of the claimant's impairments." *O'Leary v. Schweiker,* 710 F.2d 1334 at 1343 (8th Cir. June 30, 1983); *e.g., McMillian v. Schweiker,* 697 F.2d 215, 219–20 (8th Cir. 1983); *Tennant v. Schweiker,* 682 F.2d 707, 711 (8th Cir.1982); *Camp v. Schweiker,* 643 F.2d 1325, 1333 (8th Cir.1981). In the present case it is not clear what factors the vocational expert considered in giving his conclusion. Here the expert is in effect told to ignore all of the claimant's disabilities and physical restrictions. This is clearly improper. As in *O'Leary,* the same ALJ in this case erroneously excluded pain from his second hypothetical and asked the expert to consider "only the clinical or laboratory findings that are supportive of any of the diagnoses that are set forth in these documents." We hold this to be error. The ALJ must precisely set forth all of the claimant's disabilities when he poses a hypo-

thetical question. *O'Leary,* at 1343. *Tennant v. Schweiker,* 682 F.2d at 711.[5]

■ Since neither the hypothetical or the answer properly set forth all of Baugus' mental and physical impairments, the expert's testimony cannot constitute substantial evidence. *O'Leary,* at 1342; *Simonson v. Schweiker,* 699 F.2d 426, 429 (8th Cir. 1983); *McGhee v. Harris,* 683 F.2d 256, 259 (8th Cir.1982); *Gilliam v. Califano,* 620 F.2d 691, 693–94 (8th Cir.1980); *Behnen v. Califano,* 588 F.2d 252, 255 (8th Cir.1978); *Daniels v. Mathews,* 567 F.2d 845, 848 (8th Cir.1977).

A vocational expert cannot be expected to assume the evidence and testimony and then state an opinion as to whether a claimant has residual skills that can be transferred to other occupations. The result of such a procedure is to require vocational experts to make credibility findings, weigh and balance conflicting evidence, and interpret often complicated medical documents and testimony. The ALJ must enumerate the claimant's impairments and must include in his consideration allegations of pain and other nonexertional impairments. *Tennant v. Schweiker,* 682 F.2d at 711; *Camp v. Schweiker,* 643 F.2d at 1332. If the ALJ excludes pain from the hypothetical, he must set forth his reasons for doing so.[6]

### B. *Evidence of Pain.*

■ With this in mind, it must be noted that a claimant is not required to produce

---

**5.** We are not suggesting that a hypothetical question must include every physiological impairment suggested by the evidence. *Vasquez v. Schweiker,* 701 F.2d 733 (8th Cir.1983). However, hypotheticals must be phrased so that a vocational expert is not required to assume the testimony or record. For purposes of review, the ALJ is required to set forth those physical and mental impairments in the hypothetical which are accepted as true by the ALJ. And just as importantly, an expert must be able to accurately assess the availability of jobs based on the hypothetical question. *Brenner v. Schweiker,* 711 F.2d 96 at 99 (8th Cir.1983); *Camp v. Schweiker,* 643 F.2d 1325, 1332–33 (8th Cir.1981).

**6.** Under the new Fed.R.Evid. 702–705, the suggested procedure is to avoid the use of long hypotheticals and simply allow the expert to state his opinion "without prior disclosure of

the underlying facts or data unless ... the court requires otherwise." Fed.R.Evid. 705. The rule contemplates that the expert be required to disclose the underlying facts or data on cross examination. This procedure is recommended in adversary proceedings before a court or jury. *See Twin City Plaza, Inc. v. Central Surety & Ins. Corp.,* 409 F.2d 1195 (8th Cir.1969). The difficulty in social security administration hearings is that the claimants often are without counsel and there is no cross examination. Under these circumstances we deem it incumbent on the ALJ to either particularize the facts or underlying data in his question or to require the vocational expert to set forth in his answer the reasons for his opinion. Otherwise, as here, the reviewing court has no means to determine upon what underlying facts the conclusion may be based upon.

"objective evidence" which corroborates allegations of pain. *Simonson v. Schweiker,* 699 F.2d at 429; *McDonald v. Schweiker,* 698 F.2d at 365; *Cole v. Harris,* 641 F.2d 613, 615–16 (8th Cir.1981); *Brand v. Secretary of HEW,* 623 F.2d 523, 525 (8th Cir. 1980). There is no evidence in this record that would allow the ALJ to make a credibility finding that Baugus did not experience severe pain. On the contrary, the medical evidence clearly substantiates Baugus' claims of pain. The record is devoid of testimony or evidence that would permit the ALJ to make that credibility determination. *See Lund v. Weinberger,* 520 F.2d 782 (8th Cir.1975). Even Dr. Hostettler, called as a witness by the Secretary, indicated Baugus had lower back pain.

■ Where the evidence of pain is not conflicting, it must be given the proper weight by the ALJ. *McDonald,* at 365. As we stated in *O'Leary:* "Moreover, although credibility findings are for the ALJ in the first instance, the ALJ's personal observations of the claimant may not alone constitute substantial evidence that she can perform sedentary work. *See McMillian v. Schweiker, supra,* 697 F.2d at 221–222; *Lund v. Weinberger,* 520 F.2d 782, 785 (8th Cir.1975)." *Id.* at 1342. *Cf. Isom v. Schweiker,* 711 F.2d 88 at 89 (8th Cir.1983) (where inconsistencies exist in the record, ALJ allowed to disbelieve subjective testimony of pain).

■ It was clear error for the ALJ to exclude Baugus' testimony about pain from the hypothetical. Based on our review of the evidence there exists no valid reason for excluding pain from the hypothetical. We find the ALJ erred in this regard.[7]

---

7. The ALJ separated the medical evidence and testimony of Baugus when framing his hypotheticals to the vocational expert. We have held that an ALJ should not consider evidence of physical and mental impairments separately. *Camp v. Schweiker,* 643 F.2d 1325, 1333 (8th Cir.1981). We stated in *Camp:* "Evidence as to claimant's impairments must be considered as a whole and cannot be fragmented so as to diminish their combined impact." *Id.* at 1333 (*quoting Lewis v. Califano,* 574 F.2d 452, 456 (8th Cir.1978); *see Stephens v. Secretary of Health, Ed. & Welfare,* 603 F.2d 36, 41 (8th Cir.1979); *Wroblewski v. Califano,* 609 F.2d 908 (8th Cir.1979). The ALJ's use of two separate hypotheticals, one dealing with Baugus' testimony and the other with the medical testimony, had this effect. The medical evidence and the testimony must be combined in order to give the vocational expert a realistic picture of the situation.

*Conclusion.*

We agree that the Secretary did not meet her burden of proving that Baugus was capable of performing other substantial gainful employment. Because we find substantial evidence on the record as a whole that Baugus was disabled within the meaning of the Act, we need not remand the case to the ALJ for further proceedings. Therefore, we reverse the district court's grant of summary judgment and order an award of disability benefits to Baugus.