1. President Clinton appointed Kenneth S. Apfel, to serve as Commissioner of Social Security, effective September 19, 1997, to succeed John J. Callahan, Ph.D. Pursuant to Rule 25(d)(1) of the

Therefore, IT IS ORDERED that the plaintiff's "Motion for a New Trial" be and hereby is denied, with costs.

**Simone M. MARTIN, Plaintiff,**

v.

**Kenneth S. APFEL,[1] Commissioner of Social Security, Defendant.**

**Civil No. 3-96-CV-90192.**

United States District Court, S.D. Iowa, Davenport Division.

Oct. 7, 1997.

Federal Rules of Civil Procedure, Kenneth S. Apfel is hereby substituted for John J. Callahan as defendant in this action.

John A. Bowman, Davenport, IA, for Plaintiff.

Christopher D. Hagen, Asst. U.S. Atty., Des Moines, IA, for Defendant.

## MEMORANDUM OPINION AND ORDER

PRATT, District Judge.

Plaintiff, Simone M. Martin, filed a Complaint in this court on December 11, 1996, seeking review of the Commissioner's decision to deny her claim for Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 (1994). This Court may review a final decision by the Commissioner. 42 U.S.C. § 405(g). For the reasons set out herein, the Commissioner's decision is reversed.

## BACKGROUND

Plaintiff filed an application for Supplemental Security Income benefits on November 14, 1994. Her application was denied initially and upon reconsideration. After a hearing, Administrative Law Judge Jean M. Ingrassia (ALJ) issued a decision on January 5, 1996, denying benefits. On November 8, 1996, the Appeals Council denied Plaintiff's request for review. Plaintiff filed this Complaint on December 11, 1996.

## STANDARD OF REVIEW

"The Commissioner's decision is conclusive upon this court if it is supported by relevant evidence a reasonable person might accept as adequate to support the decision, i.e. 'substantial evidence.' *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)." *Stanfield v. Chater*, 970 F.Supp. 1440, 1455 (E.D.Mo.1997). In *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir.1987), the Court wrote:

In the review of an administrative decision, "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. National Labor Relations Bd.*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951). Thus, the court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory. See *Steadman v. Securities and Exchange Commission*, 450 U.S. 91, 99, 101 S.Ct. 999, 1006, 67 L.Ed.2d 69 (1981). It follows that the only way a reviewing court can determine if the entire record was taken into consideration is for the district court to evaluate in detail the evidence it used in making its decision and how any contradictory evidence balances out.

## ALJ'S FINDINGS

The ALJ, following the sequential evaluation (20 C.F.R. § 404.1520), found Plaintiff has not engaged in substantial gainful activity since September 26, 1994, the date on which the application was protectively filed. At the second step, the ALJ found that Plaintiff has severe impairments: dysthymia and panic disorder. At the third step, the ALJ found that none of Plaintiff's impairments are severe enough to meet or equal any of the impairments listed in Appendix 1,

Subpart P, Regulations No. 4. (Tr. at 19.) The ALJ found:

> The claimant has the following residual functional capacity: She is not significantly limited in her abilities to remember locations and work-like procedures, understand very short and simple as well as detailed instructions, and remember short and simple instructions. She may be moderately limited, however in her ability to remember detailed instructions. In the area of sustained concentration and persistence, the claimant is not significantly limited in her ability to carry out very short and simple instructions. She is not significantly limited in her ability to sustain an ordinary routine without special supervision, work in coordination or proximity to others without being distracted by them, and make simple work related decisions. She is able to ask simple questions or request assistance and can interact appropriately with the general public. She might, however, be moderately limited in her abilities to accept instructions and respond appropriately to criticism as well as maintain socially appropriate behavior. (20 CFR [§ ]416.945)

(Tr. at 19–20.) At the fourth step of the sequential evaluation, the ALJ found that Plaintiff is unable to do her past relevant work. At the fifth step, the ALJ found that there is a significant number of jobs in the national economy that Plaintiff can perform. (Tr. at 20.)

## DISCUSSION

In making the residual functional capacity finding, set out above, it is obvious that the ALJ relied on a report from Plaintiff's treating psychiatrist, Steven C. Chang, M.D. Indeed, the ALJ wrote: "These functional limitations are drawn from Dr. Chang's report at Exhibit 12." (Tr. at 18.) Dr. Chang, however, included limitations that the ALJ neglected to put into her findings. For example, Dr. Chang wrote that Plaintiff would be moderately limited in her ability to complete a normal work day and work week without interruptions from psychologically based symptoms. (Tr. at 172.) Although this limitation was included in the hypothetical question, (Tr. at 82,) the vocational expert testified, in response to questions from the claimant's representative, that if panic attacks happened once a week, "the job would disappear". (Tr. at 88.) The vocational expert testified that an acceptable absentee rate would be approximately two days per month. (Tr. at 87.) Plaintiff testified: "A panic attack could last anywhere from three hours to three days. But if I have an actual flashback, that puts me under for a week or more." (Tr. at 67) Plaintiff said the last time she had a panic attack was the week before the October 1995 hearing. (Id.) In his report of March 13, 1995, Dr. Chang stated that on January 26, his clinic received a call from staff at the Community Services office who reported that Plaintiff was having "anxiety attacks" and hiding under the bed. (Tr. at 171.)

At the hearing, testimony was taken from Sherry Boatman, a case manager at Vera French Mental Health Center. Ms. Boatman testified that Plaintiff is in a program for chronically mentally ill patients, and that she had been referred to the program by Dr. Chang. (Tr. at 73.) Chronically mentally ill, according to Ms. Boatman, means that the patient has been in the mental health system for over a year. (Tr. at 74.) Ms. Boatman said that Plaintiff attends a structured community support program at least three days a week. This program includes independent living skills classes, recreation and groups. (Tr. at 77–78.)

In *McCoy v. Schweiker*, 683 F.2d 1138, 1147 (8th Cir.1982) (en banc), the Court held the residual functional capacity which must be found is the ability to work "day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." In *Rhines v. Harris*, 634 F.2d 1076, 1079 (8th Cir.1980), the Court wrote: "Employers are concerned with substantial capacity, psychological stability, and steady attendance ... It is unrealistic to think that they would hire anyone with the impairments of this claimant." The Court continued: "The Secretary need not find a specific job for a claimant. However, it must be shown that claimant can realistically perform in existing employment. *Brinker v.*

*Weinberger,* 522 F.2d 13, 18 (8th Cir.1975). The Secretary has failed to do so in this case."

█ It is the holding of this Court that the testimony of the vocational expert, the testimony of Sherry Boatman, the reports of Dr. Chang, and the testimony of the claimant herself, are evidence which detract from the substantiality of evidence in support of the decision of the ALJ. Plaintiff met her burden of proving that she is unable to do her past relevant work. The burden, therefore, shifted to the Commissioner to prove that Plaintiff has a residual functional capacity for other work and that other work exists in significant number for such a person. *McCoy v. Schweiker,* 683 F.2d at 1147; *O'Leary v. Schweiker,* 710 F.2d 1334, 1338 (8th Cir.1983). The finding that Plaintiff has a residual functional capacity for other work is not supported by substantial evidence on the record as a whole. A remand to take additional testimony would only delay the receipt of the benefits to which Plaintiff is entitled. An award of benefits is, therefore, the appropriate remedy. *Gavin v. Heckler,* 811 F.2d at 1201.

Attached to Plaintiff's Brief are 51 pages of treatment notes from the Vera French Community Mental Health Center. Plaintiff's attorney claims these records were sent to the Appeals Council on October 16, 1996. The Appeals Council issued it's decision on November 8, 1996. The medical records do not appear in the record of the case provided to the Court. For that reason, the Court did not consider these medical records when making its decision. The Court, however, is quite disturbed that these records were not provided to the ALJ prior to her decision. Under the Administrative Procedures Act, the substantive law that ALJs must apply, as well as the substantial decisional law that they must apply, ALJs have a difficult, if not impossible, job. The ALJ is in the "peculiar position of acting as an adjudicator while also being charged with developing the facts." *Landess v. Weinberger,* 490 F.2d 1187, 1189 (8th Cir.1974). It is incumbent upon attorneys who represent the disabled that they understand ALJs should not have to secure evidence that is easily accessible to the lawyer and claimant.

At the hearing, the ALJ pointed out that she was under the impression Plaintiff had only seen her doctor on two occasions and was told by the Case Manager that Plaintiff sees the doctor on a regular basis. (Tr. at 75.) The Court does not understand why the ALJ did not, at that moment, instruct Plaintiff's representative to provide copies of the treatment records within a reasonable amount of time. An ALJ has the duty to fully and fairly develop the record, even if a claimant is represented by an attorney. *Warner v. Heckler,* 722 F.2d 428, 431 (8th Cir.1983). Neither is Plaintiff's counsel without blame. The Court takes notice that counsel represents numerous Social Security and Supplemental Security Income claimants. Surely, the most basic service a representative can perform is to provide medical records to the ALJ in a timely manner. Claimants desperately need the benefits for which they apply. They seek the services of attorneys who will assist them to prosecute their claims as effectively and expeditiously as possible. The practice of Social Security law is not a game of cat and mouse. Medical records should be provided to the agency as early as possible. It does no one any good— not the claimant, not the ALJ, and not the Court—for the attorney to fail to procure and submit records that will support the client's case. If an attorney has difficulty obtaining medical records from a particular provider, the ALJ and the staff at the Office of Hearings and Appeals can often provide the necessary incentive to the provider (and if necessary compel the production of documents) so that the record is complete at the time of a decision. For this system to work correctly, the ALJ and the attorney need to communicate, in a non-adversarial manner, so the best interest of the claimant is served. As the Court said in *Battles v. Shalala,* 36 F.3d 43, 44 (8th Cir.1994):

"... an administrative hearing is not an adversarial proceeding." *Henrie v. Dept. of Health & Human Serv.,* 13 F.3d 359, 361 (10th Cir.1993). "[T]he goals of the Secretary and the advocates should be the same: that deserving claimants who apply

for benefits receive justice." *Sears v. Bowen,* 840 F.2d 394, 402 (7th Cir.1988).

The *Iowa Code Of Professional Responsibility For Lawyers,* Canon 7, EC 7–15 states:

The nature and purpose of proceedings before administrative agencies vary widely. The proceedings may be legislative or quasi-judicial or a combination of both. They may be ex parte in character, in which event they may originate either at the instance of the agency or upon motion of an interested party. The scope of an inquiry may be purely investigative or it may be truly adversary looking toward the adjudication of specific rights of a party or of classes of parties. The foregoing are but examples of some of the types of proceedings conducted by administrative agencies. *A lawyer appearing before an administrative agency, regardless of the nature of the proceeding it is conducting, has the continuing duty to advance the cause of the lawyer's client within the bounds of the law.* Where the applicable rules of the agency impose specific obligations upon a lawyer, it is the lawyer's duty to comply therewith, unless the lawyer has a legitimate basis for challenging the validity thereof.

(Emphasis added)

The decision of the ALJ, which became the final decision of the Commissioner, is reversed. The Commissioner is ordered to compute and pay Plaintiff the benefits to which she is entitled.

The judgment to be entered will trigger the running of the time in which to file an application for attorney's fees under 28 U.S.C. § 2412(d)(1)(B) (Equal Access to Justice Act). *See Shalala v. Schaefer,* 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993).