**Mattie M. NUNN, Appellant,**

v.

**Margaret HECKLER, Secretary of Health and Human Services, Appellee.**

**No. 83–1844.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 13, 1984.

Decided April 23, 1984.

---

L. Steven Goldblatt, Lawrence Wittels, St. Louis, Mo., for appellant.

Thomas E. Dittmeier, U.S. Atty., Wesley D. Wedemeyer, Asst. U.S. Atty., St. Louis, Mo., for appellee; Paul P. Cacioppo, Regional Atty., Region VII, D. Samuel Borin, Atty., Dept. of Health and Human Services, Kansas City, Mo., of counsel.

Before BRIGHT, McMILLIAN and AR-NOLD, Circuit Judges.

BRIGHT, Circuit Judge.

Mattie M. Nunn appeals from a judgment of the district court [1] affirming a final decision of the Secretary of Health and Human Services (Secretary) denying her claims for disability insurance and supplemental security income benefits. For reversal, Nunn contends that the Secretary's decision is unsupported by substantial evidence. For the reasons that follow, we reverse.

Nunn was born on June 16, 1924 and has an eighth grade education. From 1968 until 1979 she worked at a hospital as a housekeeper and head linen clerk. Her duties as head linen clerk required her to walk five hours a day and lift and carry stacks of linen weighing up to twenty pounds.

On February 6, 1980, Nunn filed applications for disability benefits, alleging she was unable to work due to a sprained back. The applications were denied initially and on reconsideration. On December 2, 1980, Nunn testified before an administrative law

---

1. The Honorable John F. Nangle, Chief Judge, United States District Court for the Eastern District of Missouri.

judge (ALJ), who denied benefits. Nunn sought judicial review. Because the transcript of the administrative hearing could not be prepared, the district court remanded the case for further administrative proceedings.

On November 23, 1981, Nunn appeared before the same ALJ. At the hearing, Nunn testified that she had constant and severe pain in her back, hands, wrists, and other joints, swelling in her hands and legs, weakness in her legs, shortness of breath, and dizziness. She stated that she was unable to walk, stand, or sit for any length of time. In addition, she stated that she fell frequently and, as a result of a fall in 1979 or 1980, she fractured her ribs. In attempts to alleviate the pain, Nunn took several different medications, injections, heat treatments, and physical therapy. Nunn testified, however, that she had not obtained any relief. She stated she was unable to perform any housework and only left her home to attend church once a week.

On December 11, 1979, Nunn was examined by Dr. Michael Richmond. Nunn complained of low back pain and reported that she had injured her back while lifting bags of laundry at work. Physical examination demonstrated "exquisite" tenderness in her lumbar spine. X-ray examination demonstrated spina bifida. On January 2, 1980, Dr. Richmond hospitalized Nunn, who continued to complain of low back pain. After bed rest, physical therapy, and medication, Nunn was discharged in one week as improved.

On February 1, 1980, Nunn was still in pain and was examined by Dr. Joseph Sudekum. Dr. Sudekum also reported that Nunn had tenderness in her spine and a decreased range of motion because of pain. Dr. Sudekum diagnosed lumbar strain and believed that Nunn should avoid lifting objects weighing more than fifteen pounds.

At the request of the Secretary on May 29, 1980, Dr. Harry Acker examined Nunn, who complained of low back pain, weakness in her legs, and "crazy" headaches. Dr. Acker reported that it was difficult to evaluate her complaints but noted that x-ray examination demonstrated mild scoliosis.

Since June 1980 Dr. Robert Poetz has treated Nunn. In June and December of 1980, Dr. Poetz admitted Nunn to Normandy Osteopathic Hospital to evaluate and treat her complaints of pain. By letter of November 17, 1981, Dr. Poetz diagnosed her as having degenerative joint disease of the lumbar spine, knees, and ankles, cardiomegaly, hypertension, and heart disease. He stated that Nunn had difficulty walking and was unable to sit or stand for any period of time without experiencing pain. Dr. Poetz believed that Nunn would be unable to be gainfully employed because of her multiple physical problems. Dr. Poetz enclosed office notes which reveal numerous office visits for complaints of pain, refills of medication, and injections. An October 11, 1980 entry indicates that Nunn fell after experiencing pain in her leg and suffered bruised ribs with a possible fracture. In addition, a report prepared by the doctor's office personnel states that Nunn had received physical therapy treatment three times a week from approximately July 1980 through April 1981.

At the Secretary's request, on January 11, 1982, Dr. Daniel Murphy examined Nunn to evaluate her complaints of shortness of breath. After a physical examination, an electrocardiogram stress test, and a chest x-ray, Dr. Murphy suspected that Nunn had either coronary insufficiency, pleurisy, or chest wall syndrome. Dr. Murphy completed a residual functional capacity (RFC) checklist and indicated that during the course of an eight hour day, Nunn could sit five hours, walk two hours, and stand one hour, and occasionally lift and carry up to ten pounds.

On January 23, 1982, Dr. C.B. Powell also examined Nunn at the Secretary's request. After physical and x-ray examination, Dr. Powell found no significant evidence of arthritis, a good range of motion in her joints, and believed that "her complaints are exaggerated and that she has no significant objective evidence of disabili-

ty." On a RFC checklist, Dr. Powell indicated that Nunn could sit eight hours a day, stand and walk four hours, and occasionally lift and carry twenty pounds.

The ALJ denied benefits, finding that Nunn could return to her past work as a head linen clerk, which he characterized as light work. The ALJ found that Nunn's complaints of disabling pain were not credible. In discounting her allegations of severe pain, the ALJ noted that he had observed her appearance and demeanor at two administrative hearings, that Nunn's testimony concerning her fall in 1980 was unsupported by the medical evidence, and that Nunn "wore no dentures at the hearing [which] obviously enhanced the pathetic image she was attempting to project." The ALJ also stated that "the most compelling evidence" against Nunn was that the "overall objective medical evidence [did not] justif[y] the extreme intensity, frequency or duration of the pain and discomfort which the claimant alleges." In finding that Nunn could return to her past work as a linen clerk, the ALJ relied on the opinion of and the RFC checklist completed by Dr. Powell, one of the Secretary's consulting physicians, and rejected the opinions of Dr. Murphy, another consulting physician, and Dr. Poetz, Nunn's treating physician.

■ It is well established in this circuit that an ALJ may not disregard a claimant's subjective complaints of pain "solely because the objective medical evidence does not fully support them." *O'Leary v. Schweiker,* 710 F.2d 1334, 1342 (8th Cir. 1983). "Although the ALJ may reject testimony on the basis of credibility, such rejection must be supported by legitimate reasons for disbelief and cannot be a guise for circumventing the rule that objective evidence is not needed to support subjective evidence of pain." *Tome v. Schweiker,* 724 F.2d 711 at 713 (8th Cir.1984). In assessing allegations of pain, an ALJ may consider any inconsistencies in the record, *Isom v. Schweiker,* 711 F.2d 88, 90 (8th Cir.1983); frequency and type of medication and treatment, *Weber v. Harris,* 640 F.2d 176, 178 (8th Cir.1981); daily activities, *Reiland v. Harris,* 645 F.2d 11, 13 (8th Cir.1981); and a claimant's appearance and demeanor at the administrative hearing, *Ballowe v. Harris,* 650 F.2d 130, 133 n. 2 (8th Cir.1981) (per curiam). In addition, "[a] claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability." *Rivera v. Schweiker,* 717 F.2d 719, 725 (2d Cir.1983).

In this case, we find the ALJ's proffered reasons for disbelieving Nunn's allegations of pain are unsupported, and, in some instances, contradicted by the record. First, the ALJ placed great emphasis on his perception that Nunn was attempting to create a "pathetic" image at the hearing. Although, as noted above, an ALJ may consider a claimant's appearance and demeanor at the hearing, an ALJ "may not reject a claimant's allegation of severe pain solely because of [her] appearance at the hearing * * *." *Ballowe v. Harris,* 650 F.2d at 133 n. 2. Second, the ALJ stated that there was no medical evidence to substantiate Nunn's testimony of a fall in which she fractured her ribs. However, Dr. Poetz' office notes of October 11, 1980 clearly stated that Nunn was being treated as a result of a fall in which she bruised and possibly fractured her ribs. We believe that the reasons offered by the ALJ were merely a guise for his belief that the "overall objective medical evidence" did not fully support Nunn's complaints. However, there was objective medical evidence of a back impairment and possible chest condition. As has been stated, "[a] back condition may affect one individual in an inconsequential way, whereas the same condition may severely disable another person who has a greater sensitivity to pain or whose physical condition * * * is generally deteriorated." *Landess v. Weinberger,* 490 F.2d 1187, 1190 (8th Cir.1974). In this case, there is no evidence of malingering. To the contrary, claimant has a consistent work record and has persistently attempted to alleviate her pain by repeated hospitalizations, outpatient appointments, medi-

cations, injections, traction, and physical therapy treatments.

■ In the circumstances of this case, the ALJ's reliance on the opinion of and the residual functional capacity checklist completed by Dr. Powell, a consulting physician who only examined claimant on one occasion, cannot constitute substantial evidence on the record as a whole to support the finding that Nunn could return to her past work as head linen clerk, a job which required her to walk at least five hours a day. *See McCoy v. Schweiker*, 683 F.2d 1138, 1147 n. 8 (8th Cir.1982) (en banc) ("as a general rule little weight is afforded RFC checklists * * * and reports of consulting physicians who examine the claimant on only one occasion") (citations omitted). Even Dr. Murphy, another consulting physician, believed Nunn could only walk two hours a day. Dr. Poetz, Nunn's treating physician, believed she was totally disabled and in support of his opinion supplied his records to document that she had repeatedly visited his office complaining of pain. Thus, the opinion of the ALJ in this case does not show a proper credibility basis for rejecting Nunn's complaints of pain.

■ When a claimant has demonstrated an inability to return to her former work, the burden shifts to the Secretary to establish the presence of other jobs in the national economy that a claimant can perform. *O'Leary v. Schweiker*, 710 F.2d at 1337. In this case, the Secretary did not satisfy her burden by submitting a hypothetical question to a vocational expert in order to determine whether jobs exist in the national economy for Nunn. *See Simonson v. Schweiker*, 699 F.2d 426, 430 (8th Cir.1983) (when a claimant presents evidence of significant pain, the Secretary must present vocational testimony to establish the availability of jobs).

**2.** We note that the ALJ characterized Nunn's past work as a head linen clerk as light work. The Secretary's regulations may support a finding of disability for Nunn as a person of advanced age (55 and older), with a limited education (seventh through eleventh grade) and either unskilled work experience or nontransferable

Accordingly, we reverse and vacate the judgment of the district court with instructions to remand this case to the Secretary for further consideration in light of the opinion.[2]

ARNOLD, Circuit Judge, dissenting.

Plaintiff had the burden of proving that she was unable to return to her job as a head linen clerk. The ALJ found that she had not met the burden and rejected her claims of unbearable pain. In doing so, he gave specific and detailed reasons. Because I believe that his findings are supported by substantial evidence on the record as a whole, I respectfully dissent.

The facts and legal principles are fully set out in the Magistrate's [*] report and recommendation, which Chief Judge Nangle (correctly, I think) accepted. I add a few observations.

1. This Court stresses, *ante*, p. 648, that an ALJ may not reject a claimant's testimony "solely" because of her appearance or demeanor at the hearing. That is not what the ALJ did here. He relied upon plaintiff's demeanor as only one factor among several. There is nothing illegitimate about that. Triers of fact do it every day, and we routinely approve credibility findings based on exactly this kind of observation of the behavior of witnesses.

2. The Court criticizes the ALJ for stating that there was no medical evidence to substantiate plaintiff's testimony that she had fallen and broken her ribs. The Court cites Dr. Poetz's office notes of October 11, 1980, as evidence of such a fall. A quotation from the ALJ's opinion will expose the fatal difficulty with this reasoning:

> She testified that she fell one week prior to the hearing in November 1981. However, the clinical notes from Dr. Poetz, which ran through December 23, 1981,

work skills. *See* 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 201.01–02. We leave this matter to the Secretary's further consideration.

[*] The Hon. David D. Noce, United States Magistrate for the Eastern District of Missouri.

make no mention of any treatment for this fall ....

Tr. 17. Thus, the claimed fall, evidence of which the ALJ found lacking, occurred in November 1981. That Dr. Poetz's notes mention a fall that happened before October 11, 1980, in no way undermines the ALJ's reasoning on this point.

3. The opinion of a treating doctor is ordinarily to be preferred over that of a consultant who sees the claimant only once. But here the ALJ did not mechanically and uncritically accept the opinion of the consulting physician. He analyzed Dr. Poetz's (the treating doctor's) opinion in some detail and also observed that Dr. Powell, as an orthopedic surgeon, was entitled to more deference on a question of musculoskeletal condition than Dr. Poetz, an osteopath. This reasoning is well within the customary province of the finder of fact. In addition, the Court is mistaken when it says "there is no evidence of malingering." *Ante*, p. 648. Dr. Chao, an associate of Dr. Poetz, treated plaintiff in June 1980 and had this to say:

> It is felt the pt. [patient?] may have some pain, but this is quite exaggerated at this time. Evidence of malingering has to be ruled out.

Tr. 158. (The second sentence, I take it, means that a sufficient possibility of malingering exists to require further evidence to rule it out, not that there is no evidence of malingering.)

4. Lack of objective findings cannot alone support an ALJ's rejection of testimony of pain. But again, that is not what happened here. The ALJ simply considered the weakness of the objective medical evidence as one element in his analysis. Surely this Court is not holding such reasoning erroneous as a matter of law. Subjective evidence of pain must be carefully considered, but it would be a complete abandonment of common sense to outlaw any reference in an ALJ's opinion to the strength or weakness of the objective findings.

5. I have not been slow to decry the Secretary's persistent refusal to follow our cases. See, *e.g., Hillhouse v. Harris*, 547 F.Supp. 88, 92–93 (W.D.Ark.1982) (Arnold, J., sitting by designation), *aff'd per curiam*, 715 F.2d 428 (8th Cir.1983); *cf. id.* at 430 (McMillian, J., concurring) (Secretary's actions may in the future lead to contempt proceedings). The Secretary's behavior is lawlessness in high places. But we also have forms and limitations of law to observe, one of the most important of which is respect for the unique role of the trier of fact, especially when the demeanor and credibility of witnesses are involved. In my view, the Court today exceeds those limitations.