**Evans J. WAGONER, Plaintiff,**

**v.**

**Otis R. BOWEN, Secretary of the Department of Health and Human Services, Defendant.**

**No. 84–4160–CV–C–5.**

United States District Court,
W.D. Missouri, C.D.

Sept. 29, 1986.

Wayne Dierker, Sweet Springs, Mo., for plaintiff.

Anita Mortimer, Asst. U.S. Atty., Kansas City, Mo., for defendant.

## ORDER

SCOTT O. WRIGHT, Chief Judge.

On March 18, 1982, plaintiff filed an application for disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* The claim was denied throughout the administrative process, and on May 1, 1984, plaintiff filed a complaint in this Court. On November 20, 1984, this Court overruled the Secretary's finding that plaintiff was not disabled and remanded for the purpose of determining whether plaintiff was capable of performing any kind of substantial gainful activity.

On remand, the Administrative Law Judge (ALJ) held a supplemental hearing in which additional testimony from plaintiff was taken. In addition, a vocational expert was called to testify as to plaintiff's ability to engage in some other employment activity. The ALJ rejected plaintiff's testimony as "incredible" and ruled that plaintiff was not under a "disability" within the meaning of the Social Security Act. For the follow-

ing reasons, this Court vacates the decision of the Secretary and enters an award for plaintiff for all accrued Title II benefits since July 7, 1981.

## I. Factual Background

On March 18, 1982, plaintiff filed his application to establish a period of disability beginning on June 7, 1981, under 42 U.S.C. § 416, and to obtain disability benefits pursuant to 42 U.S.C. § 423. Plaintiff, now 55 years old, alleged disability due to heart problems, shortness of breath, and severe pain caused by arthritis in his hips, elbows, fingers, wrists, shoulders and neck.

Plaintiff was 53 years old at the time of the first hearing, has an eleventh-grade education, and has prior work experience as a construction electrician and laborer. Plaintiff had a steady work record in the construction business from 1955 until mid-1981. His duties involved continuous standing, walking and bending, as well as substantial amounts of heavy lifting. His most recent regular job entailed setting switching gears at the Calloway nuclear power plant near Fulton, Missouri.

On June 7, 1981, plaintiff entered Lake of the Ozarks General Hospital, complaining of sharp chest pains which were exacerbated by exertion. Plaintiff was later transferred to the University of Missouri Medical Center. At that time, the doctors noted that plaintiff experienced chest pain induced by exertion, which was relieved by nitroglycerine. An ECG disclosed a congenital right bundle branch block and left anterior hemiblock, but no signs of significant coronary artery disease. In essence, doctors could not specify the cause of plaintiff's chest pain. Plaintiff was discharged with prescriptions for Nitroglycerin, Isordil and Inderal on June 16.

In July, 1981, plaintiff's friends at the Calloway plant arranged for him to take a desk job. Plaintiff worked at that position for approximately six weeks, but quit in August, 1981, when he began experiencing recurrent nausea and dizziness.

On May 7, 1982, Peter A. Boyer, M.D., a consulting physician, examined plaintiff and reported that he "complained of [pain] on movement of the shoulders, but passive range of motion was within normal limits of those joints. The remainder of the musculo-skeletal examination was normal." Dr. Boyer concluded that while plaintiff "has musculoskeletal pain [there is] no significant joint limitation." Additionally, Dr. Boyer noted that plaintiff had undergone cervical disk surgery in 1976 and that plaintiff had osteoarthritis.

On June 2, 1982, plaintiff, at the request of the Social Security Administration, underwent pulmonary function studies at St. Mary's Health Center in Jefferson City to evaluate his breathing problems. The physician who administered these studies reported that the results were within normal limits.

On July 29, 1982, Kenneth N. Azan, M.D., a consulting specialist in cardiology, examined plaintiff and concluded while plaintiff did not have any coronary artery disease, the doctor did note that plaintiff had osteoarthritis. He did not indicate the severity of plaintiff's arthritis.

On November 29, 1982, plaintiff was admitted to the Veterans Administration Hospital (VA) in Columbia, where x-rays were taken of his shoulders, hips and cervical spine. The x-rays of the shoulders and hips were negative, but the x-rays of the cervical spine revealed degenerative changes.

From March 6 through March 8, 1983, plaintiff was again hospitalized at the VA Hospital for complaints of dizziness and chest pains. During this period, Paul Noder, M.D., reported that tests revealed that: "The neck had normal mobility, thyroid and trachea. The lung examination revealed no dullness to percussion. There were bilateral basilar rales that cleared to some degree with deep respiration. There were no wheezes. There were also decreased breath sounds at the bases bilaterally.... Chest x-rays revealed mild degenerative changes of the thoracic spine. The bony structures and soft tissues were normal."

On April 8, 1983, plaintiff returned to the VA to undergo an Exercise Thallium Scan

(EST) which had to be stopped because of hip pain and leg fatigue.

From September 14 through September 20, 1984, plaintiff was again hospitalized at the VA. On this occasion, one doctor noted that plaintiff's neck was mobile but that "musculoskeletal exam revealed decreased range of motion of his hips bilaterally and pain on active movement."

. On April 16, 1985, David D. Scherr, M.D., a consulting specialist in orthopedics, examined plaintiff for complaints of arthritis in the neck, hips, elbows, shoulders and knees. Dr. Scherr reported that:

"He had a normal gait. Trendelenburg test was negative at both hips and he had normal range of motion of both hips but claimed pain over each femoral greater trochanter on maximum rotation of both hips.... Range of motion of both shoulders was normal when I assisted him, but he refused to try to flex or abduct his shoulders past ninety degrees, unassisted. Examination of his hands were within normal limits except for mild lateral angulation of the right long finger distal interphalangeal joint. Range of motion of both knees was entirely normal, but he claimed mild tenderness on palellofemoral compression on the left and tenderness above the left knee medial jointline as well as below the right knee medial jointline. Cervical spine range of motion was forty-five degrees each of left and right rotation, thirty degrees of each of left and right lateral bend, and he had full flexion but only twenty degrees of extension at which point [plaintiff] said that pain stopped him."

Dr. Scherr also completed a form in which he assessed plaintiff's ability to do work-related activity. He reported that he found no evidence to support plaintiff's claims of limitation of lifting, carrying, sitting, standing, or walking. He also indicated that plaintiff's neck problems "probably wouldn't limit ... activities much if at all [but] might mildly limit" his capacity for reaching, handling, feeling, pushing, and pulling.

On April 16, 1985, Dr. Boyer examined plaintiff for complaints of musculoskeletal pain and shortness of breath. Based on his findings, Dr. Boyer concluded that plaintiff

"complains of multiple joint pains, but the only objective abnormality is in the neck examination. Remainder of the joints are completely normal to physical examination. He appears to have very mild obstructive pulmonary disease but pulmonary function tests were normal in 1982, which is probably compatible with the clinical findings on today's examination ... In general, I feel there was limitation of the neck motion, which would make it difficult for him to participate in any activity that would require looking up frequently or turning his head from side to side. Some of the activities ..., including climbing and crawling, might be difficult for him because of deconditioning. However, on an objective basis, on the basis of his physical examination I cannot definitely identify a problem that would limit the activities or exposures as identified on [SSA's form entitled "Medical Assessment of ability to do work-related Activities"]".

At the first administrative hearing held on May 16, 1983, plaintiff testified that because of his hip and chest pain, he could only walk 50 or 60 yards once a week. He also testified that his joints were hot, red and swollen with arthritis, which was worse at night and improved somewhat during the day. However, after reviewing the evidence, the ALJ concluded that plaintiff was capable of performing past relevant work and discounted plaintiff's complaints of pain as incredible.

On review, this Court concluded that while the ALJ was correct in ruling that plaintiff had not demonstrated disabling cardiovascular problems, the ALJ's failure to consider plaintiff's breathing problems and complaints of arthritis-related pain was error since both were established by the medical evidence in this record. In vacating the ALJ ruling, this Court noted:

"In evaluating the credibility of a claimant's allegations of pain, an ALJ should

consider factors such as the claimant's work history and efforts to seek relief from pain, in addition to the objective medical evidence. [citation omitted]. In the instant case, analysis of these factors overwhelmingly weighs in favor of a finding that plaintiff's complaints of neck and shoulder pain were credible. Plaintiff had an exemplary work record, he was taking medication to cope with arthritis, and the objective medical evidence corroborated plaintiff's testimony."

Thus, this Court held that there was insubstantial evidence to support the ALJ's conclusion that plaintiff could perform his former work as a construction electrician. The case was remanded for the taking of additional evidence and vocational expert testimony.

At the second administrative hearing held on August 12, 1985, plaintiff again testified to severe neck pains resulting from neck surgery in 1976. Plaintiff also testified to severe pains in his hips, elbows, finger joints and wrists, all of which interfered with his sleeping. Plaintiff stated that, initially, the VA had had him on some kind of medication, which plaintiff had to be taken off of because plaintiff couldn't afford it. Plaintiff stated that he now took over 20 aspirins a day in order to cope with these pains.

As to the arthritis-related pains, plaintiff gave the following testimony:

"Q. You have trouble with your hips, your elbows, fingers, wrists—

A. Yes sir. All of the time.

Q. Do they swell or turn red?

A. Yes. They swell and get hot and turn red. If I just happen to accidentally bump them or something, they'll swell up (unintelligible). It's terrible.

Q. Okay. Does joint pain give you any problem in walking?

A. Yes, it does.

Q. What kind of problem?

A. My right hip is giving away on me and down I go. I fell—I don't know, at least once a week. Busted my glasses. Broke my nose about three months ago.

Q. Do you have any warning before that goes out?

A. No sir. I sure don't.

Q. Do you have any difficulty lifting things?

A. Yes, sir, I do. I can't lift no weight.

Q. Well, you can lift some weight.

A. I'm not—

Q. How much?

A. A cup of coffee perhaps.

Q. You lifted a bag of groceries.

A. That's happened when I fell, I lifted a bag of groceries. Helped my wife get groceries out of the car.

. . . .

Q. When you get up in the morning, do you have any trouble dressing yourself?

A. Yes, sir. I sure do.

Q. What kind of problems?

A. It takes me a long time to get my clothes on. The worst thing is taking a shower.

Q. Why is that bad?

A. My arm is stiff. I can't much give myself my own shower. My shoulders and joints are stiff.

Q. Okay.

A. I can't stand to bend over.

Q. Anything particular about dressing yourself that gives you problems?

A. I can't stand on one foot to put my pants on any more. I have to sit on the side of the bed to get both legs in my pants.

Q. Do you have any trouble putting your shirt on?

A. Yes, sir. I sure do. I can't bend my arms to get my arms in the sleeves of my shirt."

Also at this second supplemental hearing, the ALJ called Michael Horan, a vocational rehabilitation counselor, as a vocational expert. In response to several hypothetical questions, Mr. Horan stated that, based on plaintiff's past work experience as an electrician, plaintiff could perform several different jobs falling within the re-

sidual functional capacity (RFC) levels of sedentary, light, and medium work.

In finding that plaintiff was not disabled, the ALJ again found plaintiff's testimony and complaints of pain incredible based primarily on the fact that the severity of the pain and plaintiff's allegation of falling was not "confirmed by medical evidence."

## II. Standard of Review

The scope of judicial review of the Secretary's decision is very narrow; the Secretary's ruling is conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Alexander v. Weinberger*, 536 F.2d 779 (8th Cir.1976). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *McMillian v. Schweiker*, 697 F.2d 215, 221 (8th Cir.1983). This standard of review, however, is "more than mere rubberstamp of the Secretary's decision." *Id.* at 220.

■ The claimant has the initial burden of establishing the existence of a disability as defined by 42 U.S.C. § 423(d)(1). Once the claimant establishes that his impairment is so severe that he cannot return to his former occupation, the burden shifts to the Secretary to prove that the claimant can perform some other kind of substantial gainful activity. *O'Leary v. Schweiker*, 710 F.2d 1334, 1337 (8th Cir.1983); *McDonald v. Schweiker*, 698 F.2d 361, 364 (8th Cir.1983). To meet this burden, the Secretary need not find a specific job opening for the claimant, but must prove that substantial gainful activity is *realistically* within the mental and physical capabilities of the claimant. *McMillian*, 697 F.2d at 221.

■ When reviewing the record to determine if there is substantial evidence to support a finding that the plaintiff is "realistically" capable of engaging in substantial gainful employment, the Court is to consider the following factors: the educational background, work history, and present age of the plaintiff; subjective complaints of pain and the plaintiff's description of physical activities and impairments; the medical opinion given by treating and examining physicians; the corroboration by third parties of claimant's physical impairments; and the testimony of vocational experts when based upon proper hypothetical questions that fairly sets forth *all* of the claimant's physical and mental impairments. *McMillian*, 697 F.2d at 221.

## III. Discussion

On its initial review of the ALJ's denial of benefits, this Court concluded that plaintiff's impairment was such that plaintiff could not return to his former job. Thus, on remand, the burden of proof shifted to the Secretary to show that substantial gainful activity is realistically within the physical capabilities of this plaintiff. Based upon the medical evidence, plaintiff's testimony and the vocational expert's testimony, this Court cannot conclude that there was substantial evidence to show that plaintiff could, realistically, perform in any of the activities indicated by the ALJ.

■ First, it is the opinion of this Court that the ALJ erred in discounting plaintiff's allegations of disabling pain. It is well-established in this circuit that an ALJ may not disregard a claimant's subjective complaints of pain *solely* because the objective medical evidence does not fully support them. *Nunn v. Heckler*, 732 F.2d 645, 648 (8th Cir.1984); *O'Leary v. Schweiker*, 710 F.2d 1334, 1342 (8th Cir.1983). And, "[a]lthough the ALJ may reject testimony on the basis of credibility, such rejections must be supported by *legitimate reasons* for disbelief and cannot be a *guise* for circumventing the rule that objective evidence is not needed to support subjective evidence of pain." (emphasis added) *Nunn*, 732 F.2d at 648; *Tome v. Schweiker*, 724 F.2d 711, 713 (8th Cir.1984).

In this case, the major basis for the ALJ's rejection of plaintiff's testimony regarding disabling pain and his complaints of falling down was that such evidence was not supported by medical evidence, thereby making plaintiff's testimony "incredible."

While the medical evidence failed to establish that plaintiff had any coronary problems, the medical reports did establish that plaintiff has been adversely affected by his neck operation in 1976 and by osteoarthritis. Thus, the only issue on these conditions turns on the severity of the impairments.

Plaintiff testified to the severity of his arthritis, and neck pain and the accompanying limitations which include plaintiff's inability to sleep, his difficulty in dressing and bathing himself, and inability to walk for any extended periods of time. In addition, plaintiff had had a consistent work record for 26 years, from 1955 until 1981, had tried to work a desk job which he had to quit because of his ailments and has persistently attempted to alleviate his pain by repeated hospitalization, outpatient appointments and medication. Furthermore, plaintiff testified that he was taken off certain medications to alleviate the pain because of his inability to pay for it. *See Dover v. Bowen*, 784 F.2d 335, 337 (8th Cir.1986) ("Although it is permissible in assessing the severity of pain for an ALJ to consider a claimant's medical treatment and medications, the ALJ must consider a claimant's allegation that he has not sought medical treatment or used medications because of lack of finances.") *See also Tome v. Schweiker*, 724 F.2d 711, 714 (8th Cir.1984). Thus, in assessing plaintiff's credibility, the ALJ was obligated to give more credence to plaintiff's testimony. *See Nunn v. Heckler*, 732 F.2d 645, 648 (8th Cir.1984) ("... a claimant with a good record is entitled to substantial credibility when claiming an inability to work because of a disability.")

■ Therefore, it is the belief of this Court that the reasons offered by the ALJ for rejecting plaintiff's testimony were merely a *guise* for his belief that the overall objective medical evidence did not fully support plaintiff's complaints and, thus, constituted an illegitimate basis for disbelieving the plaintiff. *See Wheat v. Heckler*, 763 F.2d 1025, 1030 (8th Cir.1985) (The ALJ must point out specific inconsistencies in the medical evidence or in claimant's testimony or activities to justify disregard of subjective symptoms); *See also Streissel v. Schweiker*, 717 F.2d 1231, 1233 (8th Cir.1983) ("It is simply insufficient for the Secretary to suggest in conclusory fashion the complaints of pain [by a claimant] are not credible.") Thus, taking plaintiff's testimony as to the severity of his impairments as true, the Court must consider whether there was substantial evidence supporting the conclusion that plaintiff realistically was capable of performing some other kind of substantial gainful activity.

■ It should be noted that a vocational expert's responses to hypothetical questions posed by an ALJ constitutes substantial evidence only where such questions precisely set forth *all* of the claimant's physical and mental impairments. *See McMillian v. Schweiker*, 697 F.2d 215, 221 (8th Cir.1983). In this case, the hypothetical questions posed by the ALJ were sufficiently imprecise to raise some doubt as to whether plaintiff was capable of performing medium, light or sedentary work.

■ Here, the vocational expert's statements that plaintiff could perform work as an electronic assembler, solderer and coil winder was in response to hypotheticals that did not specifically include the severe pain, shoulder, neck and hip pain, plaintiff's inability to walk for a long period, his pain in his fingers and other joints, which prevented plaintiff from performing daily routine tasks. In fact, the vocational expert admitted that all of these jobs would require a great deal of manual dexterity, some walking and lifting, and the ability to sit erect, in one position, for extensive periods of time. In addition, the vocational expert also admitted that such positions would require occasional climbing, balancing, stooping, crouching, kneeling and crawling.

■ In order for the ALJ to find that plaintiff is able to perform this light or sedentary work, such work must realistically be within the functional residual capacity of the particular claimant. This capacity is

not merely the ability to occasionally lift weights in a physician's office, but rather "it is the ability to perform the requisite physical acts day-in and day-out, in the sometimes competitive and stressful conditions in which real people work in the real world." *Lanning v. Heckler,* 777 F.2d 1316, 1318 (8th Cir.1985). If, as plaintiff claims, his arthritis and neck pains make it extremely difficult for him to do simple tasks like dressing and bathing himself, it is hard to imagine that such a person could realistically perform these manually dextrous duties on a day-in and day-out basis. Thus, this Court concludes that the Secretary failed, based on the testimony of this one vocational expert, to maintain its burden of showing that plaintiff could, realistically, perform some other kind of substantial gainful employment activity.

Accordingly, it is hereby

ORDERED that the Secretary's decision is reversed and that the Secretary shall pay plaintiff all accrued Title II benefits since June 7, 1981. It is further

ORDERED that the government shall bear the costs of this proceeding.