Helen S. WARREN Plaintiff

v.

Jo Anne B. BARNHART, Commissioner, Social Security Administration Defendant

No. 4:00CV00908JWC.

United States District Court, E.D. Arkansas, Western Division.

March 29, 2002.

Laura J. McKinnon, Atty. at Law, Fayetteville, AR, for Plaintiff.

Stacey Elise McCord, Asst. U.S. Atty., Little Rock, AR, for Defendant.

## MEMORANDUM OPINION AND ORDER

HOWARD, District Judge.

Currently pending before the Court is the Magistrate Judge's recommendation that the final decision of the Commissioner of the Social Security Administration denying plaintiff's claim for Disability Insurance benefits and Supplemental Security Income based on disability be affirmed and that judgment be entered for the Commissioner dismissing the action with prejudice. After carefully reviewing the record, the Court rejects the Magistrate Judge's recommendation and for the reasons hereinafter discussed, the Court reverses the Commissioner's decision and remands the case for further administrative proceedings pursuant to the fourth sentence of § 405(g) of the Social Security Act, Title 42 United States Code.

## FACTUAL BACKGROUND

Helen S. Warren filed her applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act on April 14, 1999, alleging disability since March 12, 1999, based on bilateral carpal tunnel syndrome. She has had surgery on both hands and has arthritis in both thumbs (Tr. 29–31). Warren was born in 1954, and has an eighth grade education. In response to a question posed by the Administrative Law Judge whether she could read and write, Warren testified:

A. Yeah, my handwriting's not as good and I don't understand some words—other than that, yeah.

Q. Have you ever had any vocational training?

A. No, sir (Tr. 27).

Warren has worked as a cook in a restaurant, gathered eggs on farms, built both tools and small motors.

After Warren's applications for a period of disability were denied by the Social Security Administration as well as her request for reconsidered determination, she requested a hearing before an Administrative Law Judge (ALJ). The ALJ conducted a hearing on January 25, 2000 where claimant appeared pro se.[1]

Warren testified that she can't lift over 10 pounds; that she takes Bayer's aspirins for pain; that a physician, Dr. Boates, placed her on nerve pills, but she did not

---

1. At the beginning of the hearing the following exchange took place between claimant and ALJ:

ALJ: ... You understand, you do have a right to an attorney or representative? Do you want to proceed today without one?

CLMT: I don't have the money to have a lawyer.

ALJ: Have you tried to get a representative?

CLMT: Well, I talked to— a lawyer at Russellville when I was getting Workman's Comp., and she said to let her know and she'd help me on my disability.

ALJ: Okay. Do you want to proceed today without a representative?

CLMT: I don't know.

ALJ: Well, it's up to you. I can't advise you, you understand. You'll have to decide if you want to proceed without one or not.

CLMT: Yeah, I guess I can because I can't afford one (Tr. 25).

have the funds to continue this medication. Claimant further stated that due to muscle pain she cannot stand or sit very long and can only walk a "couple of blocks." She states that she develops a nervous condition when dealing with strangers or a crowd of people; and that she also has a shortness of breath or breathing problems as well as a memory problem (Tr. 29–33).

Claimant stated that she received her first Worker's Compensation payment in March, 1999 and her last check on September 22, 1999; and that she has sought employment, but when "they asked if I ever had carpal tunnel syndrome[ ][a]nd, I said yes, I've had surgery on both hands .... they kind of snarl at that"(Tr. 29, 33).

### Medical Reports

On January 15, 1999, Millard–Henry Clinic stated in a report that on examination Warren's "first and second finger of her right hand is still numb, the third finger on the right hand feels like it locks up. The right thumb is numb and hurts at times, the left also has problems. She has finished her therapy at CORF. She is still taking her anti-inflammatories." The report further provides that "she of course has limitation of range of motion of the fourth right finger because of surgery that she has had on that finger. Same with the right fifth finger. No real tenderness until we examined her right thumb. She has pain and tenderness at the MP joint but range of motion seems good. The right middle or third finger tends to lock down in that position and has to be forced up with a very palpable pop when it clicks through" (Tr. 120).

St. Mary's Rehabilitation Medical Center's biweekly treatment, progress and re-evaluation reports dated from January 15, 1999 to July 20, 1999, state, among other things, that Warren has severe pain at the left wrist, pain level designated as 6 out of 10 with 10 being regarded as the worst and that the hand therapist "has modified finger extension splint to go with the night resting splint to further facilitate MCP/DIP/PIP extension of the index and middle fingers of the right hand" (Tr. 134–142).

On July 28, 1999, Dr. Michael M. Moore stated that Mrs. Warren reports the "numbness in her fingers has improved. She describes mild to moderate pain in the palm which is not uncommon following carpal tunnel surgery. Mrs. Warren will continue therapy treatments to include iontophoresis, range of motion, and strengthening exercises. She can perform light duty work. She should wear splint and perform no lifting greater than 10 pounds using her left hand" (Tr 149). On September 22, 1999, Dr. Moore stated in a report that claimant experienced mild pain in the palm and that symptoms in her left hand have significantly improved; that he "suspect" the symptoms will "gradually" resolve during the next several weeks; that claimant had completed her therapy program and it is his opinion she can resume regular work status and activities; and that she could return to his office if she has any problems in the future (Tr. 196).

### Testimony of Vocational Expert

The following testimony was given by Jim Spragins, Vocational Expert, pursuant to an examination conducted by ALJ:[2]

Q. I'd like for you to please assume a hypothetical 45 year old person with an eighth grade education. This person is limited to a light RFC. This person can only occasionally perform frequent rapid, repetitive flexion and extension movements of the wrists. This person can lift no more than 10 pounds or less with the left hand. This person suffers

2. The record does not indicate that the ALJ afforded the claimant an opportunity to examine the Vocational Expert, or advised her of her right to do so.

mild to moderate pain with mild to moderate loss of concentration, but is not precluded from performing simple routine repetitive tasks. The reaching, handling, fingering and feeling is mildly restricted in both wrists and hands. Can that person return to the prior work described?

A. She could not return to the work as an assembler. And, her description of the egg gatherer, I don't think she could do that either.

Q. Are there any jobs in significant numbers in the region that person could perform?

A. Yeah, I think she could work as a cashier . . . .

. . . .

Q. Any other jobs?

A. I think she could work as a security guard— a gate guard. Not an armed one, one that would work at, at a factory greeting people as they came in.

. . . .

Q. Okay. If I added the additional limitation that this person could only walk 2 blocks, stand for only 15 minutes at a time, could not do any bending— could that person perform the above listed jobs?

A. . . . The limitations that you gave would restrict them more to a sedentary type of position . . . .

Q. Are there any other jobs that person could perform other than the sedentary cashier jobs?

A. No, sir. There are not.

Q. You've heard the claimant's testimony. If her testimony is given full credibility, would she be able to perform any of the above listed jobs?

A. No, sir. Your Honor, the testimony she gave concerning the inability to sleep, rating of pain at level 10, saying her nerves are bad and she cannot deal with strangers—she would not be able to do those jobs.

Q. Are there any jobs she could perform in significant numbers in the economy?

A. No, sir (Tr. 36–40).

The Administrative Law Judge's Decision

In his March 28, 2000, decision, the ALJ concluded that Warren was not disabled within the meaning of the Social Security Act and not entitled to disability and disability insurance benefits, nor eligible for supplemental security income (Tr. 21). The ALJ found that Warren has not " engaged in substantial gainful activity since her alleged onset date. The record also established that status post bilateral carpal tunnel release and arthritis of the thumbs have more than minimally limited the claimant's ability to do basic work activities since the alleged onset date. Thus, the claimant satisfies the requirement for a severe impairment" (Tr. 17). The ALJ "discarded" Warren's testimony as to shortness of breath, a heart problem and bad nerves for "want of medically determinable impairment" (Tr. 17). The ALJ further stated "[e]ven if the requirement for medically determinable impairment were overlooked, these alleged impairments would be considered not severe, for the claimant does not even take medication for them, save for over-the-counter analgesics for headaches" (Tr. 17). The ALJ in considering Dr. Michael Moore's September, 1999, report found that "Dr. Moore reported that the claimant could resume regular work status and activities" and stated further that "Not only does the medical evidence not support the claimant's allegations, but the claimant lacks the credibility necessary to establish disability" (Tr. 18).

In reaching the conclusion that the Commissioner had met the burden of showing that Warren "has been able to perform other work," the ALJ made the following observation regarding the testimony of the vocational expert:

The vocational expert, who noted that the vocational background provides no transferable skills, testified that such an individual could do unskilled light work as a cashier or which some 1.7 million jobs exist in the nation, unskilled light work as a security gate guard of which some 316,000 jobs exist in the nation or unskilled light work as a packing machine operator of which some 157,000 jobs exist in the nation. The vocational expert's testimony is credible and the number of jobs identified is significant. Thus, the claimant has been able to perform work existing in significant numbers in the national economy since March 12, 1999 (Tr. 19).

## DISCUSSION

Significantly, Warren, who has completed eight years of schooling and does not "understand some words," indicated that she desired to be represented by counsel during the hearing, but advised the ALJ, upon being advised by the ALJ " you'll have to decide if you want to proceed without one or not[,]" " Yeah, I guess I can because I can't afford one." While the ALJ was not obligated or duty bound to insist that Warren have counsel, the ALJ, in the interest of developing a full and fair record, did not advise Warren of the availability of Legal Services, in many areas, for persons claiming social security benefits and usually no fees are imposed unless benefits are received.[3] Such action would have, indeed, demonstrated the ALJ's awareness of the obligation to develop the record fully.

The record does not indicate that the ALJ advised Warren, during the course of the hearing, that upon establishing the inability to perform her past relevant work, the burden shifts to the Commissioner to establish that she has been able to perform other work. However, the record indicates that the ALJ observed in his decision, which was rendered two months after the hearing, that "since claimant has shown an inability to perform her past relevant work, the burden shifts to the Commissioner to show that she has been able to perform other work." See: *Marshall v. Heckler*, 731 F.2d 555 (8th Cir. 1984). ( stating that the ALJ failed to indicate that the burden of proof had shifted to the Secretary *to prove that there are other substantial gainful activities that the claimant can perform* when claimant shows that she has a severe impairment that prevents her from doing her former work, the initial burden of proof). The record does not reflect that the ALJ afforded Warren the opportunity to cross-examine the Commissioner's vocational expert, or advised her that she possessed this right. However, the ALJ asked the Vocational Expert: "Q. Do you have any questions for the claimant? A. No, I do not (Tr. 37)." Further, Warren testified that she develops a nervous condition when dealing with strangers or a crowd of people and develops a memory problem, but the ALJ failed to address these factors in finding that claimant was not disabled and that the Commissioner had established that Warren could perform other jobs. The Court is persuaded that a full and fair record was not structured in this action.

The ALJ found that Warren's "allegations as to symptoms and functional limitations are not credible as to the extent she

---

**3.** In *Richardson v. Perales,* 402 U.S. 389, 410, 91 S.Ct. 1420, 1431, 28 L.Ed.2d 842, the Supreme Court emphasized that the ALJ in social security cases is charged with the responsibility of developing the facts. See also: *Lewis v. Schweiker,* 720 F.2d 487, 489 (8th Cir.1983) (stating that the Court's past decisions established the ALJ's obligation to develop the record fully.)

would be considered wholly precluded from work disability" and found also that inasmuch as she was simply taking over the counter medication instead of prescription medication, the "alleged impairments would be considered not severe." The ALJ in assessing Warren's credibility failed to consider either Warren's testimony that she was not financially able to purchase prescription medication, or Warren's work history which speaks volumes and, indeed, strengthens her credibility. The record reflects that between 1987 and 1998, Warren was gainfully employed working 6 to 8 days per week and from 6 to 8 hours per day; that she frequently lifted items weighing between twenty-five and fifty pounds; and that after she had surgery on her hands, she sought employment, but her applications were denied when she disclosed that she had surgery on both hands (Tr. 83–90). See: *Nunn v. Heckler*, 732 F.2d 645 (8th Cir.1984) (stating a claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability).

The ALJ stated in his decision that Warren's physician, Dr. Michael M. Moore, in September 1999, " reported that the claimant could resume regular work status and activities." The September 22, 1999, report provides, in material part, the following:

"She does experience mild pain in the palm. I *suspect* symptoms will gradually resolve during the next several weeks. Mrs. Warren has completed her therapy program. It is my opinion she can resume regular work status and activities (Tr. 196)." Emphasis added.

In diagnosing or investigating the nature of Warren's condition or problem Dr. Moore made use of the term "suspect" which indicates that Dr. Moore is basing his opinion on suspicion and uncertainty and not proof or a factual basis. Dr.

Moore's opinion Warren can resume regular work status and activities cannot constitute substantial evidence to support the ALJ's decision that Warren is not disabled. In *Nunn v. Heckler*, 732 F.2d 645, 648 (8th Cir.1984), the Court made the following observation:

It is well established in this circuit that an ALJ may not disregard a claimant's subjective complaints of pain solely because the objective medical evidence does not fully support them.

The ALJ made the following observations in his decision regarding the testimony given by the vocational expert:

The vocational expert, who noted that the vocational background provides no transferable skills, testified that such an individual could do unskilled light work as a cashier of which some 1.7 million jobs exist in the nation, unskilled light work as a security gate guard of which some 316,000 jobs exist in the nation or unskilled light work as a packing machine operator of which some 157,000 jobs exist in the nation. The vocational expert's testimony is credible and the number of jobs identified is significant. Thus, the claimant has been able to perform work existing in significant numbers in the national economy since March 12, 1999.

The following testimony offered by the vocational expert and not accepted by the ALJ in concluding that Warren has not been disabled and is not entitled to a period of disability:

Q. You've heard the claimant's testimony. If her testimony if given full credibility, would she be able to perform any of the above listed jobs?

A. No, sir. Your Honor, the testimony she gave concerning the inability to sleep, rating of pain at the level 10, saying her nerves are band and she cannot deal with strangers—she would not be able to do those jobs.

Q. Are there any jobs she could perform in significant numbers in the economy?

A. No, sir (Tr. 39–40).

## CONCLUSION

For the foregoing reasons, the Secretary's decision that Warren is not entitled to a period of disability, disability insurance benefits and supplemental security income is reversed inasmuch as the decision is not supported by substantial evidence on the record as a whole. This matter is remanded to the administrative agency for further proceedings pursuant to the fourth sentence of § 405(g) of the Social Security Act, Title 42 United States Code.

## JUDGMENT

Pursuant to the Memorandum Opinion and Order entered this date, the Court reverses the decision of the Commissioner, and remands the case to the Commissioner to conduct proceedings consistent with the Court's ruling. This is a sentence four remand.