769 F.Supp. 1073 (1991)
Reynold Lee MILLER, Plaintiff,
v.
Louis W. SULLIVAN, M.D., Defendant.
No. S 90-0097-C.
United States District Court, E.D. Missouri, Southeastern Division.
June 13, 1991.
*1074 *1075 Therese A. Schellhammer, Little Schellhammer & Barbour, Poplar Bluff, Mo., for plaintiff.
Wesley D. Wedemeyer, Asst. U.S. Atty., St. Louis, Mo., for defendant.

ORDER
LIMBAUGH, District Judge.
Plaintiff filed this action seeking judicial review of defendant's denial of plaintiff's application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq.
The parties' cross motions for summary judgment were referred to United States Magistrate Catherine D. Perry for her report and recommendation. After a careful review and analysis of the matter, Magistrate Perry determined that the decision of the administrative law judge was supported by substantial evidence of record. On May 7, 1991 Magistrate Perry filed a report and recommendation in which she recommended that plaintiff's motion for summary judgment be denied and defendant's motion for summary judgment be granted. The Court agrees with Magistrate Perry's conclusion that the findings of the administrative law judge were supported by substantial evidence of record.
Accordingly,
IT IS HEREBY ORDERED that the report and recommendation dated May 7, 1991 of United States Magistrate Catherine D. Perry is SUSTAINED, ADOPTED and INCORPORATED herein.
IT IS FURTHER ORDERED that summary judgment is entered in favor of defendant and against plaintiff on the merits of plaintiff's complaint.

REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
CATHERINE D. PERRY, United States Magistrate Judge.
This is an action under 42 U.S.C. § 405(g) for judicial review of the defendant's final decision denying the plaintiff's application for disability insurance benefits under Title II of the Social Security Act. Both parties have moved for summary judgment and the cause was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b).

Procedural History
On April 27, 1989, plaintiff filed an application for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 et seq., alleging a disability by reason of back pain. (Tr. 57-62). The applications were denied initially and upon reconsideration. (Tr. 41-55, 37-40). Plaintiff requested a hearing which was held on December 7, 1989, before Administrative Law Judge ("ALJ") James E. Darst. (Tr. 14-31). The ALJ determined that plaintiff was not under a disability at any time during which he met the special earnings requirement. (Tr. 5-9). The Appeals Council denied review of the ALJ's determination. (Tr. 2). Thus, the decision of the ALJ stands as the final determination of the Secretary.

Evidence Before the Administrative Law Judge
At the hearing, plaintiff testified that he was fifty-four years old and had completed two years of college. He also stated that he had attended a six to eight week training *1076 course in welding, and had received on the job training as a service man. Plaintiff is six feet, two inches tall and weights two hundred and twenty-five pounds. (Tr. 16-17).
Plaintiff testified that he last worked with Illinois Power Company, and that he was employed by them for about twenty-four to twenty-five years. He stated that he left his job in 1988 but that he had been on sick leave for approximately one year prior to leaving his job. Plaintiff described his duties as working on regular gas stations, checking gas leaks, working on appliances, and a variety of other duties. (Tr. 17-18).
Plaintiff also testified that he first stopped working because of a wrist that required surgery due to carpal tunnel syndrome. He stated that he returned to work after the surgery but he then reinjured his back which he had injured prior to his surgery. Plaintiff denied being on any medical treatment for his back or wrist. However, he stated that he had seen the doctor who performed the surgery on his wrist, and was told that there was nothing further that could be done for his condition. (Tr. 18-20).
Plaintiff testified that he was not on any prescribed medication for his condition, and that he only took over-the-counter medication for the pain as needed. He stated that he could not remain in one position for any length of time, and that he was unable to lift any heavy objects. He also stated that he had difficulty in sitting, standing, or walking for any prolonged period of time. Plaintiff testified that he tired easily, that his back often "locks up," and that he suffered from a certain amount of numbness in the lower part of his back, radiating down to his legs. He further stated that when he stood he often needed to lean on something for support. (Tr. 20-22).
With respect to his exertional capacities, plaintiff testified that on a level surface he could walk about a quarter of a mile without stopping to rest. He testified that on a grade or rough ground he could only walk a few feet without rest. Plaintiff stated that it depended on the chair, but at most he could sit for about fifteen to twenty minutes before he needed to change positions, and that at most he could lift a bag of groceries. (Tr. 22).
Plaintiff testified that when he did any physical activity such as mowing the lawn or lifting any heavy object he would be in severe pain for two to three days, and that his activities had been severely restricted because of his pain. Plaintiff stated that when he went fishing he had to stand in the boat or stretch out after sitting for one hour because his back would hurt, and that he could only spend between fifteen minutes to an hour gardening without having to stop to stretch out and rest. He also stated that any gardening he did do he had to kneel because he was unable to stand up for any length of time. (Tr. 22-25).
Plaintiff testified that during the day he often had to stretch out between half an hour to an hour, to relieve the pain, and that he walked in the mornings because he suffered from edema of the legs. Plaintiff also stated that he took Dyazide for the edema. He further stated that he watched television, did some household chores such as wash dishes, tinker around his shop, and occasionally work in the garden. Plaintiff testified that he spent between an hour to an hour-and-a-half in any one of these activities. (Tr. 25-27).
Plaintiff lives with a friend who does most of the household chores. He stated that he did not drive very much since his two auto accidents because his legs went numb while driving, and stated that he now limited his driving to about ten to twelve miles per day. (Tr. 27-28).
Finally, plaintiff testified that he had some tenderness in his wrist, but that this was not a major problem, and that he was presently under medical treatment only for the edema in his legs. (Tr. 29-30).

Medical Records
The medical records reveal that on October 30, 1984, plaintiff was referred by his physician Dr. James Rehberger to William F. Hoffman, M.D. Dr. Hoffman reported *1077 that plaintiff complained of numbness in his back, buttocks, the middle part of the groin, and perineum which had been persistent since he suffered a work-related injury. A physical examination of plaintiff was essentially normal except for a flattened lumbar curve. X-rays showed fairly marked degenerative changes about the lower two lumbar segments. Dr. Hoffman recommended that plaintiff have an EMG, nerve conduction test of the lower extremities, and a CAT scan. Dr. Hoffman further recommended that if plaintiff's symptoms persisted, he be admitted for a myelogram to determine the cause of his symptoms. (Tr. 89, 116).
On November 19, 1984, plaintiff had a CT scan of the lumbar spine. The results indicated moderate to severe degenerative disc disease from L3 through S1, especially at the L5-S1 level, and narrowing of the spinal canal at the L3-4 and L4-5 levels due to bulging discs and associated degenerative disease at the facet joints. (Tr. 19).
On November 19, 1984, plaintiff also had an EMG. The results indicated that the study was at most consistent with early bilateral S1 radiculopathy versus an early peripheral neuropathy. (Tr. 92).
On September 8, 1986, plaintiff was admitted at Christian Hospital Northeast-Northwest by Dr. Hoffman. Plaintiff complained of some numbness in his back, buttocks, the middle part of the groin, and perineum. A physical examination of plaintiff was essentially normal except for a slight decreased range of motion in the neck area. Dr. Hoffman recommended that plaintiff undergo a myelogram to determine the cause of his symptoms. (Tr. 88).
While in the hospital on September 9, 1986, plaintiff had consultative exams by Bela S. Dynes, M.D., and David Smuckler, M.D., and also had x-rays including a myelogram. Dr. Dynes saw plaintiff because of mild progressive problems with urination, occasional urinary incontinence, and some very mild sexual dysfunction, and recommended a cystoscopy to determine the origin of those symptoms. Dr. Smuckler's pre-operative physical examination of plaintiff was within normal limits. The hospital x-rays and myelogram demonstrated a large ventral extradural indentation on the dural sac at L4-L5 disc space, with flattening of the L5 roots, especially on the left side, indicating degenerative disc disease involving L5-S1 and large disc herniation, L4-L5 disc space, lateralizing mainly towards the left side. (Tr. 94-98).
On September 11, 1986, plaintiff underwent a wide bilateral laminectomy of the L4 and L5 area with removal of calcified ruptured lumbar discs bilaterally at L4-5 and bilateral L4-5 foraminotomy, and cystoscopy. The results of the cystoscopy were that plaintiff's postvoid dribbling and mild urinary symptomatology were a result of early enlargement of the prostate, which appeared to be about 10 to 12 gm. and benign, with no evidence of neuropathic involvement of the bladder. (Tr. 93, 99, 104). Plaintiff was discharged from the hospital on September 15, 1986, with instructions on post-operative care. (Tr. 105).
From September 22, 1986 to October 11, 1988, plaintiff was seen by Dr. Hoffman. (Tr. 119-21). On September 22, 1986, plaintiff's sutures were removed, and he was instructed to return in four to six weeks. He underwent occupational therapy in October of 1986. (Tr. 106-08). On November 3, 1986, plaintiff was seen for a follow-up visit. Plaintiff had no leg or back pain, and was very satisfied with the surgery. On December 8, 1986, plaintiff was again seen for a follow-up visit. Plaintiff complained of back and leg pain due to strain from picking up a log and dizziness. Dr. Hoffman ordered a CAT scan, an EMG, and calorics to determine the cause of plaintiff's symptoms. (Tr. 121). Those tests were performed on December 11, 1986, and generally were within normal limits. (Tr. 109-13).
Plaintiff was not seen again by Dr. Hoffman until July 25, 1988, when he complained of numbness in his buttocks upon sitting. A physical examination was essentially normal except for mild restricted range of motion in forward flexion to forty-five degrees due to stiffness and pain. Dr. *1078 Hoffman's findings were that plaintiff had post laminectomy numbness and numbness in bilateral buttocks. Lumbar spine x-rays and a lumbar CT scan were ordered to look for instability. On August 22, 1988, plaintiff returned for a follow-up visit. Results of the CAT scan showed no evidence of disc herniation or significant stenosis. (Tr. 115). Lumbar spine x-rays showed lumbar spondylosis, quite marked. (Tr. 114). On October 11, 1988, plaintiff was again seen complaining of marked back discomfort. Plaintiff expressed that his lawyer wanted to put him on disability until he is eligible for early retirement. A physical examination of plaintiff was essentially within normal limits, although Dr. Hoffman noted that plaintiff had a significant amount of lumbar spondylosis which was bothersome in his heavy occupational responsibility. (Tr. 119-21).
On January 16, 1989, Dr. Hoffman reported that plaintiff had made a reasonably good recovery except for problems associated with activity, and noted that plaintiff's symptoms worsened with increased rigorous activity. Dr. Hoffman stated his opinion that plaintiff's work responsibilities, as he described them, would be in excess of what is reasonable for plaintiff, and recommended that he could work at "more sedentary type responsibilities." (Tr. 117).

The ALJ's Determination
The ALJ determined that plaintiff met the disability insured status requirements of the Social Security Act on April 30, 1988, the date that plaintiff stated he became disabled, and continues to meet them through December 31, 1993. The ALJ also noted that plaintiff had not engaged in substantial gainful activity since April 30, 1988. The ALJ found that the medical evidence established that the plaintiff has degenerative disc disease, but that he did not suffer from an impairment or combination of impairments that meet or equal the Listing of Impairments. The ALJ discredited plaintiff's complaints of incapacitating back pain, numbness, and leg swelling, because of plaintiff's level of activities and lack of medical care and treatment. The ALJ noted that plaintiff could not perform work requiring lifting in excess of twenty pounds, and that therefore he could not return to his past relevant work. Thus, the ALJ shifted the burden to the Secretary to show that jobs existed in substantial numbers in the economy that one with plaintiff's impairments could perform. The ALJ found that plaintiff had the residual functional capacity to perform the full range of light work. Applying Rules 202.13 and 202.14 of Appendix 2, Subpart P, Regulations No. 4 of the Medical-Vocational Guidelines, the ALJ concluded that plaintiff, considering his residual functional capacity of age, education, and work experience, was not disabled. (Tr. 6-9).

Legal Standards
The Secretary's decision is conclusive upon this Court if it is supported by "substantial evidence," i.e., relevant evidence a reasonable person might accept as adequate to support the decision. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); 42 U.S.C. § 405(g). To determine whether the Secretary's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:
(1) the credibility findings made by the Administrative Law Judge;
(2) the plaintiff's vocational factors;
(3) the medical evidence from treating and consulting physicians;
(4) the plaintiff's subjective complaints relating to exertional and non-exertional impairments;
(5) any corroboration by third parties of the plaintiff's impairments; and
(6) the testimony of vocational experts when required which is based upon a proper hypothetical question.
Taylor v. Bowen, 805 F.2d 329 (8th Cir. 1986); McMillian v. Schweiker, 697 F.2d 215 (8th Cir.1983); Brand v. Secretary of Dep't of Health, Educ. & Welfare, 623 F.2d 523 (8th Cir.1980).
Pain alone may be disabling within the meaning of the Social Security Act if it is met by objective medical evidence *1079 showing the existence of a medical impairment which could reasonably be expected to cause pain. Polaski v. Heckler, 739 F.2d 1320, supplemented, 751 F.2d 943 (8th Cir.1984), vacated, 476 U.S. 1167, 106 S.Ct. 2885, 90 L.Ed.2d 974 (1986), adhered to on remand, 804 F.2d 456 (8th Cir.1986), cert. denied, 482 U.S. 927, 107 S.Ct. 3211, 96 L.Ed.2d 698 (1987). When evaluating evidence of pain, the Secretary must consider:
(1) the objective medical evidence;
(2) the subjective evidence of pain;
(3) any precipitating or aggravating factors;
(4) the claimant's daily activities;
(5) the effects of any medication; and
(6) the claimant's functional restrictions.
If the plaintiff demonstrates that he has an impairment or combination of impairments that meets or equals the Listing of Impairments which is contained in 20 C.F.R., Subpart P, Appendix 1, and he is not engaging in substantial gainful activity, the Secretary must find that he is disabled per se. 20 C.F.R. 404.1520. If, however, the plaintiff demonstrates that he has an impairment or combination of impairments that are severe (yet not per se disabling), and which preclude him from performing his past work, the burden shifts to the Secretary to show some other type of work that one with the plaintiff's impairment(s) is capable of performing. Dover v. Bowen, 784 F.2d 335 (8th Cir.1986); Nunn v. Heckler, 732 F.2d 645 (8th Cir.1984). The Secretary may apply the Medical-Vocational Guidelines contained in 20 C.F.R., Subpart P, Appendix 2, to meet his burden if no non-exertional limitations exist. McCoy v. Schweiker, 683 F.2d 1138 (8th Cir.1982). However, when significant non-exertional limitations exist, the ALJ must call a vocational expert to testify to the existence of jobs that one with the plaintiff's impairment(s) is capable of performing.

Discussion
Plaintiff challenges the ALJ's credibility determination with respect to his subjective complaints of disabling pain in his back and legs. Plaintiff also challenges the ALJ's application of the GRID, asserting that he suffers from non-exertional impairments which limit his capacity to perform the full range of work activities within the GRID requirements, and argues that the ALJ's determination as to his residual functional capacity is not supported by substantial evidence in the record when viewed as a whole.
The undersigned finds no error in the manner in which the ALJ discredited plaintiff's subjective complaints and the ALJ's application of the medical-vocational guidelines in finding plaintiff not disabled. In evaluating evidence of pain, the ALJ is not free to ignore the testimony of the plaintiff that is uncontradicted or uncorroborated by the medical evidence. Basinger v. Heckler, 725 F.2d 1166, 1169 (8th Cir. 1984); Warner v. Heckler, 722 F.2d 428, 431 (8th Cir.1983). The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole. Millbrook v. Heckler, 780 F.2d 1371 (8th Cir.1985). Credibility assessments are always in the first instance for the ALJ and not the courts. Tucker v. Heckler, 776 F.2d 793, 796 (8th Cir.1985). Further, in assessing subjective allegations, the ALJ may consider the frequency and type of medication or treatment, daily activities and the claimant's appearance and demeanor at the hearing. Cruse v. Bowen, 867 F.2d 1183 (8th Cir. 1989); Nunn v. Heckler, 732 F.2d 645, 648 (8th Cir.1984).
The ALJ here noted in his findings that plaintiff's subjective complaints could not be disregarded merely because they were not fully corroborated by the medical evidence. The ALJ evaluated plaintiff's subjective complaints of pain by applying the guidelines set forth in Polaski v. Heckler, 739 F.2d 1320 (8th Cir.1984). (Tr. 7). In applying the Polaski guidelines, the ALJ found that plaintiff's description of his activities were not consistent with his claims of pain. Long v. Bowen, 866 F.2d 1066, 1067 (8th Cir.1989); Sykes v. Bowen, 854 F.2d 284, 286 (8th Cir.1988); Bolton v. Bowen, 814 F.2d 536, 538 (8th Cir.1987). *1080 Plaintiff testified that he drove an automobile ten to twelve miles per day, did light household chores, gardened, worked in his shop, occasionally went fishing, and watched television. (Tr. 24-26).
The medical evidence indicates that plaintiff has a degenerative disc disease. While it is undisputed that plaintiff suffers from this condition, none of the numerous medical reports in the record show that plaintiff's condition prevents him from performing any work. The lack of objective evidence in support of a plaintiff's degree of severity of alleged pain is a factor to be considered. Cruse v. Bowen, 867 F.2d 1183, 1186 (8th Cir.1989). On October 11, 1988, Dr. Hoffman found that although plaintiff complained of back pain, he had good range of motion, straight leg raising was negative, and strength, tone, bulk, and reflexes were relatively symmetrical. (Tr. 120). Previous laboratory tests and a CAT scan were within normal limits despite his previous surgery and medical condition. (Tr. 120). Although his treating physician, Dr. Hoffman, opined that plaintiff was "100% disabled," the ALJ properly interpreted his letter to mean that plaintiff could not perform his past work but could perform work with a lower level of exertion. Dr. Hoffman's use of the term "more sedentary type responsibilities" (Tr. 117), does not mandate a finding by the ALJ that only sedentary work could be performed. The ALJ's finding that plaintiff could perform the full range of light work is supported by substantial evidence in the record as a whole, given the evidence of plaintiff's activities and abilities, and the medical records provided by his own treating physician.
The application of the medical-vocational guidelines is appropriate if the ALJ discredits a plaintiff's subjective complaints of pain for a legally sufficient reason. Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir.1990); Hutsell v. Sullivan, 892 F.2d 747, 750 (8th Cir.1989); Bolton v. Bowen, 814 F.2d 536, 538 (8th Cir.1987). Because the record as a whole indicates that plaintiff has no non-exertional limitations, the use of the guidelines is appropriate.
Therefore, the record reflects a number of inconsistencies that substantially support the ALJ's findings that plaintiff was not credible in his subjective complaints of pain and limitations. Moreover, the ALJ did not err in applying the medical-vocational guidelines finding plaintiff not disabled, once the ALJ found plaintiff's testimony regarding his limitations not credible. Thus, the Secretary's decision in this case should be upheld.

RECOMMENDATION
IT IS HEREBY RECOMMENDED that the defendant's motion for summary judgment be granted and that plaintiff's motion for summary judgment be denied.
The parties are advised that they have eleven (11) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).
Dated this 7th day of May, 1991.