James A. PETERSON, Plaintiff,

v.

Donna E. SHALALA, Secretary of Health and Human Services, Defendant.

No. 8:CV92–00702.

United States District Court,
D. Nebraska.

June 29, 1993.

James P. Cavanaugh, Omaha, NE, for plaintiff.

Ronald D. Lahners, U.S. Atty., Daniel A. Morris, Asst. U.S. Atty., Omaha, NE, Frank V. Smith, III, Chief Counsel, Region VII Dept. of Health & Human Services, Kristi A. Schmidt, Asst. Regional Counsel, for defendant.

## MEMORANDUM AND ORDER

CAMBRIDGE, District Judge.

THIS MATTER is before the Court for review of a final decision of the Secretary of Health and Human Services.[1] This Court has jurisdiction of this matter pursuant to the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3).

Upon review of the parties' briefs, the administrative record, the transcript of the hearing before the Administrative Law Judge, and relevant law, the Court concludes, as further explained below, that the decision of the Secretary should be affirmed.

## BACKGROUND

The facts in this case are adequately summarized in the opinion of the Administrative Law Judge ("ALJ"), and only the relevant facts will be emphasized here. On September 30, 1983 James Peterson (hereinafter "Peterson" or "claimant") was injured when his motorcycle collided with a truck. He was initially hospitalized with a fractured left arm, fractured vertebrae, fractured sacrum, and various contusions and abrasions. He was later found to be suffering from cauda

---

1. The Court notes that, procedurally, this matter has been presented via claimant's motion for summary judgment. Such an approach, while "not required under the Social Security Act, ... serves as a convenient method under which both parties may present appropriate briefs in support and in opposition to the respective positions of the parties." *Sumler v. Bowen,* 656 F.Supp. 1322, 1330 (W.D.Ark.1987).

equina syndrome [2] accompanied by an inability to control bowel movements or urination. He was ultimately discharged, after treatment at three separate Veterans Administration hospitals, on March 9, 1984.

On March 26, 1984 the claimant was evaluated by Dr. Joel Cotton, a neurologist, who summarized his clinical impression as follows:

> [Claimant] has an essentially normal neurological examination with the exception of weakness in the right lower extremity.... He appears to have residual effects of damage to the cauda equina.... His only neurological impairment at this time appears to be that a susceptibility towards tripping or falling which is aggravated if he ambulates in excess of three blocks at a time. He otherwise states he can climb up 12 flights of stairs if he uses a handrail.... He has difficulty with bowel and bladder control with its attendant sociological consequences. There is no impairment of function in the upper extremities or with the brain.

Tr. at 225.

Dr. Cotton again examined the plaintiff on May 20, 1991. In his letter introducing his report (Exhibit 30, Transcript at 299–300) Dr. Cotton described the claimant's neurological condition as "essentially unremarkable", and reported that the claimant could (a) lift from 30 to 40 pounds, (b) stand or walk a total of two to four hours, including five to 10 minutes without interruption; (c) sit without limitation; (d) climb, balance, stoop, crouch, kneel, and crawl occasionally; (e) some limitations on pushing and pulling; (f) no limitations on reaching, handling, feeling, seeing, hearing or speaking; and no environmental restrictions. (Tr. at 301–303).

From February of 1985 through May of 1989 the claimant was treated on an outpatient basis at the Veterans Administration Medical Center in Omaha for residual problems, including his bladder problems, and in December of 1987 he was started on a bowel regimen that included bulk-forming laxatives. Exhibit 19. It is uncontroverted that the claimant has had continuing problems with fecal incontinence since his injury, though the severity and manageability of those problems is controverted.

The claimant initially filed a claim for disability benefits on September 30, 1983 (Transcript at 122), a request that was denied (Transcript at 127). Although he did not seek reconsideration of this initial finding, in October of 1988, pursuant to the Eighth Circuit holding in *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir.1984), the claimant requested reconsideration. (Tr. at 132, 134). The matter was reconsidered, and the claim was again denied. (Tr. at 136, 141).

On January 24, 1992, following a hearing, the Administrative Law Judge ("ALJ") held that the claimant was not disabled for purposes of disability benefits (Tr. 8–18). The claimant's request for review was denied by the Social Security Appeals Council on October 30, 1992 (Tr. at 3–4). That decision represents the final decision of the Secretary and is accordingly ripe for judicial review. 42 U.S.C. § 405(b, g); *Browning v. Sullivan,* 958 F.2d 817 (8th Cir.1992).

## STANDARD OF REVIEW

On review this Court must determine whether the Secretary's decision is supported by substantial evidence on the record as a whole. *Jackson v. Bowen,* 873 F.2d 1111, 1113 (8th Cir.1989). As was stated in *Jackson,*

> substantial evidence is merely such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Substantial evidence on the record as a whole, however, requires a more scrutinizing analysis. In the review of an administrative decision, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight. Thus, the Court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory.

*Id.*

In addition, because this case was reconsidered pursuant to *Polaski v. Heckler,*

---

**2.** Cauda equina syndrome consists of "dull pain in upper sacral region with anesthesia or analgesia in buttocks, genitalia or thigh; disturbed bowel and bladder functions." *Stedman's Medical Dictionary* (5th Unabridged Lawyers' Edition 1982).

739 F.2d 1320 (8th Cir.1984), the decision of the ALJ must be reviewed in light of that case, which provides that

> the adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> 1. the claimant's daily activities;
>
> 2. the duration, frequency and intensity of the pain;
>
> 3. precipitating and aggravating factors;
>
> 4. dosage, effectiveness and side effects of medication;
>
> 5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

739 F.2d at 1322. As long as an explicit credibility finding is made, it is within the province of the ALJ to decide what weight to accord the subjective complaints. *Dixon v. Sullivan*, 905 F.2d 237, 238 (8th Cir.1990).

## DISCUSSION

■ The claimant has not explicitly alleged that the ALJ did not satisfy *Polaski*'s procedural requirements. To the extent that the issue exists, the Court finds that the ALJ did meet those requirements, in that the ALJ considered the subjective complaints, explicitly found them to be not credible and, accordingly, discounted them. *[Hearing Officer's] Decision*, Tr. at 14–16.

■ The claimant essentially argues that the Secretary erred in not finding that he suffered from an "Anxiety Related Disorder", as defined at 20 C.F.R. Part 404 § 12.06 Subpart P. App. 1. Those criteria require that a claimant demonstrate *both* a medically documented finding of a recognized disorder, *and* designated effects of or results from that disorder.

The claimant's primary arguments for reversal of the Secretary's decision are (1) that the Secretary erred in failing to give sufficient weight to the treating physicians' opinions *vis a vis* the Secretary's consulting physicians, and (2) that the ALJ's opinion rested upon a response to a defective hypothetical question. Those arguments are considered below.

### 1. Weight of Opinions [3]

■ The prevailing rule, in the Eighth Circuit and elsewhere, is that "the report of a consulting physician who examined the claimant once does not constitute 'substantial evidence' upon the record as a whole, especially when contradicted by the evaluation of the claimant's treating physician." *Turpin v. Bowen*, 813 F.2d 165, 170 (8th Cir.1987). However, neither is the opinion of the treating physician "conclusive in determining disability status, [since it] must be supported by medically acceptable clinical or diagnostic data." *Matthews v. Bowen*, 879 F.2d 422, 424 (8th Cir.1989). Moreover, the deference accorded a treating physician is premised upon a presumed familiarity with the claimant's condition. *See, e.g., Havas v. Bowen*, 804 F.2d 783, 785 (2d Cir.1986). In addition, a physician consulted for the purpose of supporting a claimant's disability claim will generally not be considered a treating physician. *See, e.g., Chaparro v. Bowen*, 815 F.2d 1008 (5th Cir.1987). Nor does a one-time examination make a physician a "treating physician." *See, e.g., McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir.1987).

The record reflects that there is conflicting testimony on this matter. From approximately August of 1984 through January of 1986, the claimant worked with a clinical psychologist, Mary Q. Legino, who made a diagnosis of post-traumatic stress disorder. Dr. Legino further stated that the plaintiff chose to discontinue working with her, "despite the fact that the symptoms ... continued to persist." *Transcript* at 265.

Dr. Legino re-evaluated the plaintiff on August 15, 1990, some four years after she had treated him. In that latter evaluation

---

**3.** The Court here will presume, as the parties apparently did, that the "Treating Physician Rule" extends to Clinical Psychologists such as Dr. Legino.

she reported that he continued to "exhibit[ ] a profile which is consistent with a diagnosis of post-traumatic stress disorder." *Id.* She further recommended that he seek further help from a mental health professional. *Id.* at 267.

However, the claimant's mental state was also evaluated, via interrogatory, by Dr. Robert Muffly, a psychiatrist, in October of 1990. Dr. Muffly determined that the plaintiff's condition reflected a "sexual dysfunction with some anxiety and depression ... but not of a sufficient degree or manifestation for a diagnosis of a major psychiatric disorder." *Medical Opinion of Dr. Robert B. Muffly,* Exhibit 26, Tr. at 280–281. Dr. Muffly also testified at the hearing that post-traumatic stress syndrome does not usually follow a single incident such as a traffic accident. Tr. at 86–91.

■ The Court first holds that the elapse of four years between her last treatment of the claimant and her evaluation for purposes of his claim has transformed the status of Dr. Legino from that of a treating "physician" to that of a consulting "physician," with the result that her opinion is due no greater weight than that due Dr. Muffly. On that basis, the Court concludes that the Secretary gave due consideration to all the opinions involved and that, to the extent the opinions were conflicting, the Secretary properly resolved the issue. *See, e.g., Beasley v. Califano,* 608 F.2d 1162, 1166 (8th Cir.1979): "Where there are conflicts in the evidence ... their resolution is the province of the Secretary and not the courts."

### 2. The Hypothetical

■ The ALJ posed the following hypothetical question to Anita Howell, the vocational expert in this case:

Q: [Supposing that] based on his neurological problems the claimant had the residual impairment in walking and standing ... my question to you is, is the claimant vocationally qualified to perform sedentary work?

A: Yes, he is.

Q: And what kind of sedentary work would he be vocationally qualified to perform?

A: It would be work that would be considered unskilled. . . .

*Transcript* at 119.

The general rule regarding hypotheticals has been expressed as follows:

Hypothetical questions asked of vocational experts must set out all the claimant's impairments. If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that claimant has a residual working capacity has no evidentiary value.

*Gamer v. Secretary of Health and Human Services,* 815 F.2d 1275, 1279 (9th Cir.1987); *see also Baugus v. Secretary of Health and Human Services,* 717 F.2d 443, 447 (8th Cir. 1983). The claimant asserts that the hypothetical question posed in this case was defective because it failed to set forth all the his impairments and limitations.

The Court does not agree. As noted above, the ALJ had appropriately determined that the claimant had not established that he was suffering from an anxiety related disorder; accordingly, when the hypothetical posed to the expert described the claimant's condition as consisting of "residual limitations in walking and standing," it was a question that set out his impairments as supported by the record. Accordingly,

IT IS ORDERED that

(1) the motion for summary judgment by the claimant (Filing No. 6) is denied;

(2) the decision of the Secretary of Health and Human Services is affirmed; and

(3) the claimant's request for hearing is denied.